## CITY OF NEW YORK v. CLARK.

(Supreme Court, Appellate Division, First Department. June 12, 1903.)

1. PRINCIPAL AND SURETY—DISCHARGE OF SURETY—CHANGE OF CONTRACT.

A bond executed by a lessee, as principal, and sureties, was conditioned on the payment by the lessee of the rent of a pier held under a lease from the city of New York, and described the pier, the term of the lease, and the annual rent, and provided that it was subject to change to conform to all laws and regulations already adopted or to be adopted by the Legislature or by the board of docks. After the execution of the bond, and without notice to the sureties, the pier was enlarged, widened, lengthened, and its area more than doubled, under an agreement between the city and the lessee which provided that the lessee should pay a part of the cost of the enlargement, and which stipulated for the payment of an increased rent. *Held*, that the original lease being, in effect, superseded by the new agreement, and the old pier being lost in the new, the sureties were discharged.

Ingraham and McLaughlin, JJ., dissenting.

Submission of controversy between the city of New York and George M. Clark on admitted facts, pursuant to Code Civ. Proc. §§ 1279–1281. Judgment for defendant.

An agreement was entered into by and between Alonzo T. Decker, doing business under the firm name of A. T. Decker & Co., and the dock commissioners, representing the city of New York, whereby the said Decker leased the dock or pier at the foot of Bethune Street, North River, for the term of five years from the 1st day of May, 1890, agreeing to pay the city therefor the annual rental of $1,200. On or about the 15th day of May, 1890, the said Alonzo T. Decker, as principal, and the defendant, George M. Clark, and George B. Lawton, Jr., since deceased, executed a bond, under their hands and seals, conditioned, among other things, for the payment by the said Decker of the sum of $1,200, annual rental of said dock, to be paid in equal quarterly payments. Pursuant to said lease, Decker entered into possession of said dock or pier, and on or about the 10th day of October, 1891, made application to the board of docks of the city of New York for the enlargement of the dock or pier, agreeing to pay therefor an additional annual rental of 25 cents per square foot of enlargement, and 8 per centum of the cost of construction. The application of Decker was accepted on the part of the city, and the dock was enlarged as he had requested, he being obligated, under his application, to pay an additional annual rental of $2,900, and the sum of $940.37, which was 8 per centum of the cost of construction. The following diagram shows the original dock or pier and the enlargement:

The enlarged pier was finished and Decker took possession thereof on the 13th day of October, 1892, and continued to pay rent therefor until the 1st day of May, 1893, from which date he failed to pay any rent, and thereafter seven quarterly payments became due. Under the first lease there became due and payable to the city the sum of $2,100, which was not paid, and judgment thereon was duly entered against him, an execution issued thereon, and duly returned unsatisfied. The sureties upon the said bond were in no wise notified, nor had they knowledge, of the enlargement of the pier, or of the increased amount which Decker had obligated himself to pay, and the defendant contends that, inasmuch as the contract was so changed without his knowledge or consent, he was thereby released from all obligations under the said bond.

Argued before HATCH, McLAUGHLIN, PATTERSON, O'BRIEN. and INGRAHAM, JJ.

Terence Farley, for plaintiff.

John A. Straley, for defendant.

HATCH, J.  It has been settled by repeated adjudications that contracts of suretyship are to be construed like other contracts, so as to give effect to the intention of the parties.  As stated by Judge Earl in People v. Backus, 117 N. Y. 196, 22 N. E. 759:

> "In ascertaining that intention, we are to read the language used by the parties in the light of the circumstances surrounding the execution of the instrument; and, when we have thus ascertained their meaning, we are to give it effect.  But when the meaning of the language used has been thus ascertained, the responsibility of the surety is not to be extended or enlarged by implication or construction, and is strictissimi juris."

In Page v. Krekey, 137 N. Y. 307, 33 N. E. 311, 21 L. R. A. 409, 33 Am. St. Rep. 731, it was said by Judge O'Brien:

> "The defendant's obligation is strictissimi juris, and he is discharged by any alteration of the contract, to which the guaranty applies, whether material or not, and the courts will not inquire whether it is or is not to his injury."

In J. H. M. L. Ins. Co. v. Lowenberg, 120 N. Y. 44, 23 N. E. 978, it was said by Judge Haight:

> "The rule is that a surety is entitled to a strict construction of the bond under which it is sought to make him liable, and that it cannot be enlarged by implication to cover anything which was not in contemplation of the parties at the time the bond was executed."

These rules are not controverted, and they furnish the measure of liability which is assumed by the surety.  Like many other cases, the difficulty does not lie in the statement of the correct rule of law which governs the rights and liabilities of the parties, but in application of the rule to the facts of the particular case.  The pier upon which the right to collect wharfage was given by the terms of the contract was in existence at the time of the execution of the contract of lease, and the making and delivery of the bond.  The contract described the pier, and fixed the amount of the rental to be paid for the privilege or franchise granted by the contract.  The obligation of the surety, therefore, embraced that particular structure; and the covenants related thereto, including the payment of rent, and to none other.  The agreement between the parties did not contemplate an enlargement or extension of the pier, or the payment of an increased rental, or an assumption of liability upon the part of Decker for any increased cost or expense in improvement or enlargement of the same; nor did the contract of suretyship cover such matters, or provide therefor.  The agreement for the enlargement of the pier was made subsequent to the execution of the contract and the bond, and was solely at the instance and request of Decker.  He was the moving party therein, and the plaintiff, through its board of docks, assented thereto, imposed new and additional terms, and materially increased the burden and liability of Decker in connection with the extended structure.  While it is true that the agreement was made subject to change to conform to all laws, orders, rules, by-laws, and regulations already adopted, or to be adopted

by the Legislature of the state of New York or by the board of
docks, yet such rules and regulations only related to the use to be
made of the wharf, and had no relation to any enlargement of the
pier. That part of the agreement which provides for the right of
the board of docks to make changes pursuant to a general plan then
or thereafter to be adopted, and terminating the contract in so do-
ing, is without application to any question which arises in this con-
troversy. Whatever power the board of docks may have had by
virtue of the provisions of the agreement to which the bond of the
surety was subject is not presently of consequence, for the reason
that the enlargement of the pier was not made pursuant to any re-
served right contained in the contract. The change was effected at
the instance of Decker, and by agreement with the board of docks.
Such agreement and the enlargement was entirely outside of any-
thing for which the contract provided or contemplated. It was a
new and independent agreement, whereby the dock commissioners
undertook to enlarge, and Decker agreed to pay a proportion of
the costs and expenses of the enlargement, and an increased rental
for his right to use the same for the purposes contemplated by the
contract. Reference to the diagram shows that the width of the
pier was increased, as well as lengthened, its area being more than
doubled. After the enlargement was completed, no part of the orig-
inal pier reached the water line, and no vessel could be moored at its
side. The change was as complete as would be the inclosure of a
small building within walls covering a much larger area. I am not
able to see how it can be contended that there was not a radical
departure from the first contract made between Decker and the city.
The pier was enlarged to more than double its former dimensions.
The expense of the enlargement imposed upon Decker a substantial
burden, not only as to the cost, but as to the expense of keeping it
in repair, while the rent was increased from $1,200 per annum to
considerably more than double that amount. Not only was the con-
tract changed, but the burdens imposed were increased, and under
such circumstances the surety is held to have been discharged. Such
is the rule of law recognized in Smith v. Molleson, 148 N. Y. 241,
42 N. E. 669. Therein it was said by Judge O'Brien:

"When the terms of the contract guarantied have been changed, or the
contract, as finally made, is not the one upon which the surety agreed to
become bound, he will be released."

It does not answer to say that this was a mere extension of the
franchise which was granted, and that the original pier, to which the
contract related, remained in existence. True, it was there; but it
had become merged in a new structure, which included it on three
sides. It formed a part of the roadway of the pier, but it had ceased
to be that which was leased, and could only be used in connection
with the enlargement which had taken place. For the obligations
which Decker had assumed under his new contract, the defendant
never stood sponsor, and had not agreed to be bound. The struc-
ture for which the bond was given had lost its integrity as a pier,
and only formed a part of the roadway for access to the enlargement.
If Decker made default in the payment of the rent or of the ex-

pense of the enlargement, or both, he would be deprived of the right to use the entire pier. The right to use that part of the pier which was first leased would not survive such default, as it had become a part of, and merged into, the enlarged structure. Severed from the enlargement, it ceased to be a pier, as it could not be used for such purpose. It is evident, therefore, that the first contract was superseded by the new one—the old pier was lost in the new—and under such circumstances the surety must be held to have been discharged.

The plaintiff relies upon the case of Smith v. Molleson, supra. In that case, however, the contract for which the defendant stood surety was embraced within the terms of the defendant's bond, and it had in no respect been changed. The most that was claimed there was that the parties in its performance had so far departed from its terms as to change the defendant's condition to her prejudice, and to deprive her of rights and benefits to which she would otherwise have been entitled. The departures from the contract were held to be immaterial, and therefore not sufficient to discharge the surety from liability, but the court recognized the rule that a material departure from the contract would have the effect of relieving the surety from liability. In the present case there was not only departure from the terms and conditions of the contract, but a new contract was made respecting the subject-matter for which the defendant was surety, and the burdens imposed upon the principal were very much increased. The case, therefore, stands as an authority in support of the contention that these acts discharged the surety. In addition to this, it appears that, after the dock was enlarged, Decker paid in expenses and for rent a sum in excess of the amount reserved under the original agreement, which sum, if applied upon the rent reserved therein for the original structure, would have left no sum due under the terms of the original grant. The record, as made up, does not clearly present this question, and no point is made respecting the legal right to have these payments first applied in discharge of the original agreement. The question is not, therefore, considered or passed upon.

It is sufficient now to say that there was a new agreement respecting the property which was leased, which was entered into and carried out by the parties thereto, which changed their rights and liabilities, and imposed burdens upon Decker which the contract of suretyship never contemplated, and that this was done without the knowledge or consent of defendant, in consequence of which his contract was changed, and therefore became no longer binding.

It follows that judgment should be entered in favor of the defendant upon the agreed case, with costs.

PATTERSON and O'BRIEN, JJ., concur.

INGRAHAM, J. (dissenting). I am unable to see how the new and independent agreement between Decker and the city of New York "imposed new and additional terms, and materially increased the burden and liability of Decker in connection with the extended structure," except so far as the agreement of Decker to pay the additional rent

may be said to have impaired his ability to pay the rent for which the defendant was responsible. The fact that a lessor undertook to pay an additional sum of money for improvements upon the leasehold premises has never, so far as I know, been held to discharge a surety who had guarantied the payment of the rent. If Decker had leased one lot from the city of New York at a specified rental, for which the defendant had become responsible, the fact that Decker subsequently leased an adjoining lot from the city, for which the defendant was not responsible, could not release the surety. Yet, in my view of this case, that is the result of the new arrangement between the city of New York and Decker. At Decker's request, the city agreed to extend and enlarge the pier, in consideration of which Decker was to pay to the city an additional sum of money. The original lease, however, remained in full force and effect, and under it Decker was bound to pay to the city the rental reserved, and for that unreserved rental the defendant had become responsible in the event that Decker failed to pay. The mere fact that at Decker's request, and for his benefit, an additional structure was placed upon the leasehold property, for which Decker agreed to pay an additional sum of money, had no relation to the original lease. It did not in any respect modify it, and no additional burden was imposed upon the defendant. The city does not ask that the defendant should be required to pay the rent for the addition to the dock that Decker agreed to pay. The city has done no act which would relieve Decker from his obligations under the original lease, nor is any right that the defendant would have by way of subrogation discharged or interfered with. The lease contemplates that the department of docks should have the right to make changes or improvements upon the leasehold property. The contract itself between Decker and the city was not modified in any way. For an additional improvement, Decker agreed to pay an additional sum. That, I think, is the only effect of the new agreement between Decker and the city.

I think the plaintiff is entitled to judgment.

McLAUGHLIN, J., concurs.