THE CITY OF NEW YORK, Respondent, *v.* PETER J. COKENES, Defendant, Impleaded with UNION INDEMNITY COMPANY, Appellant. (Actions Nos. 1 and 2.)

THE CITY OF NEW YORK, Respondent, *v.* NATIONAL REFRESHMENT COMPANY, INC., Defendant, Impleaded with UNION INDEMNITY COMPANY, Appellant. (Actions Nos. 1 and 6.)

First Department, May 29, 1930.

*Charles L. Craig* of counsel [*Bernard J. Vincent,* attorney], for the appellant.

*Milton I. Hauser* of counsel [*Isaac F. Cohen* and *J. Joseph Lilly* with him on the brief; *Arthur J. W. Hilly, Corporation Counsel*], for the respondent.

PER CURIAM. The city of New York and Peter J. Cokenes entered into an agreement in writing dated June 26, 1923, for the rental by the defendant Cokenes of certain space in the St. George Terminal of the Staten Island Ferry for a period of five years from July 1, 1923, to July 1, 1928, at an agreed sum payable quarterly in advance. The space in question was to be used for lunch counters, refreshment and newspaper stands and for the sale of fruit and similar articles.

The defendant, appellant, Union Indemnity Company issued its bond guaranteeing the payment of the rent provided for by the terms of the agreement. The rent not having been paid, four actions were commenced to recover the amount due and also the amount alleged to be due because of a resale of certain privileges upon the default in payment of rent by the concessionaire.

The Special Term properly disposed of all the defenses except the fifth and sixth in the second Cokenes action. It appears to be assumed by the respondent that these defenses were stricken out, but the order entered thereon denied the motion to strike out the fifth and sixth defenses. They are similar to other defenses that have been stricken out. No appeal was taken by the city from the order denying that part of the motion.

The third alleged defense to the first cause of action appears to be the only defense requiring consideration. That defense is to the effect that there was an actual partial eviction of Cokenes and, therefore, no obligation to pay the rent. The Special Term held that the facts alleged did not constitute a defense to the action. The defendant, appellant, contends that the agreement was not a lease and that although defendant Cokenes remained in possession of the premises, accepting all the benefits, collecting all the profits and enjoying the rights and privileges granted therein, he is not liable for the rent. Several sign privilege cases and cases of similar purport are cited to establish the fact that the agreement is not a lease.

In *Gushee* v. *City of New York* (42 App. Div. 37) the court said: " He bound himself during that same time to pay for the rights he acquired the sum of $525 a month. This agreement, involving, as it did, the possession of real estate and the payment of a monthly rent for it, was practically a lease."

It is clear, therefore, that these privileges are governed by the

general rules governing leases. (*City of New York* v. *Pike Realty Corp.*, 247 N. Y. 245.)

It is contended that because the city of New York made certain alterations, repairs and improvements to the ferry house, and granted privileges to other parties, the defendant Cokenes is not required to pay rent for the time that he actually retained possession of the premises. It is not alleged that there was a provision in the lease giving the defendant Cokenes the exclusive privilege to sell to the public in or about the ferry terminal building. If the city intended to give such an exclusive privilege, that would in all probability have been stated in the agreement. That condition will not be presumed.

In addition, an exclusive privilege would have probably been much more expensive.

The defendant Cokenes remained in full possession and enjoyment of the privilege granted by the lease or license, and neither surrendered his possession nor abandoned the premises. The fact that the city saw fit to rent similar privileges on the ferry boats to other people and to make repairs or alterations which it is claimed restricted the defendant Cokenes' ability to cater to the full trade which he might otherwise have obtained, is not a defense to this action in the absence of an agreement giving that defendant such rights. There was no agreement on the part of the city that it would not repair, maintain or improve the premises, and the reasonable presumption is that it had an absolute right to do so; in fact, there was an obligation on the part of the city to keep the ferry houses in good condition.

There does not appear to have been any actual partial eviction and in the absence of abandonment there can be no claim of constructive eviction. The defendant Cokenes, having obtained possession of the premises, having accepted and enjoyed the benefits of the lease or agreement, must pay the rent reserved by the terms thereof. (*City of New York* v. *Pike Realty Corp.*, *supra*.)

The Special Term properly held that the facts alleged did not constitute a defense to the action.

The orders appealed from should be affirmed, with ten dollars costs and disbursements.

Present — DOWLING, P. J., FINCH, McAVOY, MARTIN and O'MALLEY, JJ.; FINCH and McAVOY, JJ., dissent.

FINCH, J. (dissenting). I agree that the orders appealed from should be affirmed, except as to the third defense in action No. 1 against Peter J. Cokenes, and the fifth defense in action No. 2 against the same defendant; and also as to the third defense in action No. 1 and the fourth defense in action No. 6, both against the National Refreshment Company. As to these I vote against

striking out. These defenses are substantially alike and involve the same principle. They are set up by a surety, sued upon a bond to recover arrears due upon a contract, whereunder the city granted concessions to maintain and operate stands for the sale to the public of newspapers, books, magazines, cigars, candies and refreshments at the St. George and Manhattan terminals of the Staten Island Ferry.

In brief, the appellant alleges that the plaintiff breached an implied condition of the contract by impairing the privileges granted and so changing conditions at the terminals as to subject the defendant to a new and different contract from the one originally entered into between the plaintiff and the defendant, and, therefore, the appellant is discharged under the principle that the liability of a surety is *strictissimi juris*. The waiting room, which had been opened to the public when the privileges were granted, is alleged to have been closed to all except persons having paid their fares. The stairway to the lower deck of the ferry boat was closed, thus cutting off passengers as they left the boats from access to four of the stands, because the new exit brought them directly to the street. The use of a ferry slip was discontinued, thereby depriving three stands of most of their possible patrons. The method of operation was changed so that instead of opening the gates only two or three minutes before the time of the departure of the boat, thus compelling passengers to possess idle time while·congregating in the waiting room, the new method permitted passengers to proceed directly aboard the boats and wait there. Upon the boats themselves for the first time stands were permitted for the sale of articles similar to those sold by Cokenes.

Standing alone, the allegation and its accompanying inferences, that a proportion of the passengers leaving each boat were prevented from having access to the stands of Cokenes would be a claim of material variation of or departure from the contract between the principals, resulting in the ordinary course in a substantial diminution of gross revenue. Such variation of or departure from the contract would materially affect the ability of the principal of the surety to perform, and hence would be prejudicial to the surety and would be a defense, pursuant to the rule that any change in the contract without the knowledge or consent of the surety discharges the latter. (*Livingston* v. *Moore*, 15 App. Div. 15.) Brandt on the Law of Suretyship and Guaranty (§ 439) states and illustrates the principle as follows: " Any dealings with the principal by the creditor, which amount to a departure from the contract by which the surety is bound, and which by possibility might materially vary or enlarge the latter's liabilities without his consent, generally operate to discharge the surety." And by way of illustration, the

same author in section 440 states: " Surety released by conduct amounting to departure from the contract.— * * * Where a surety entered into a bond conditioned that his principal should insure, and keep insured, certain buildings on land mortgaged by him to the creditor, and afterwards the positions of the buildings were altered by the obligee, the outbuildings being brought nearer to the house, and the risk thus increased, it was held that the surety was thereby discharged."

In the case at bar the defendant does not have to make out a physical eviction, since the transaction was not a lease and is, therefore, not controlled by the law of landlord and tenant. (*Nash* v. *Thousand Island Steamboat Co.*, 123 App. Div. 148, 157; 37 C. J. §§ 173, 183, p. 279 *et seq.;* 1 McAdam Land. & Ten. [4th ed.] § 60, p. 192; *Reynolds* v. *Van Beuren*, 155 N. Y. 120; *Hess* v. *Roberts*, 124 App. Div. 328, 330; *Stockham* v. *Borough Bill Posting Co.*, 144 id. 642, 644; *Reeve* v. *Duryee*, Id. 647, 648.) A license must be construed in accordance with the intention of the parties following the rule applicable to all contracts. (*People* v. *Backus*, 117 N. Y. 196, 201; *City of New York* v. *Clark*, 84 App. Div. 383; *National Mechanics' Banking Assn.* v. *Conkling*, 90 N. Y. 116.) Applying this principle to the case at bar, the surety had a right to assume that no change in condition would be brought about by the act of the plaintiff, and that the latter acting in concert with the principal would not undertake to materially change the contract. The surety undertook to assume its obligations in the light of the conditions as they existed at the time the contract was made, and did not agree to remain a surety upon a contract materially altered and departed from, without its consent.

Even if the defense were controlled by the law of landlord and tenant, it likewise should be sustained. In this connection the learned Special Term struck out the third defense in the Cokenes action No. 1 because, " as the defense now reads, it is difficult to spell out an actual partial eviction." The shutting off of access to the stands constituted an actual partial eviction as distinguished from a constructive eviction. If all means of access had been closed, the eviction would have been complete. To the extent to which access was substantially cut off there was an eviction *pro tanto*. This was a question of fact and the defendant, having pleaded such an actual eviction, must be permitted his day in court in order that his proof may show the extent. So it has been held from earliest times. In *Denison* v. *Ford* (7 Daly, 384) the court said: " To close all the stands is to take away the market; and depriving the premises of the characteristics and advantages of a market, including the congregation of dealers and attraction of purchasers, is depriving the lessee of a stand of the very thing

he leased, or of the beneficial enjoyment of it. Hence there was an eviction when the other stands were closed and no lights nor ingress and egress furnished, except that immediately connected with plaintiff's stand. Physical interference with plaintiff's premises was not necessary to establish a case of eviction (*Cohen* v. *Dupont,* 1 Sandf. 260; *Dyett* v. *Pendleton,* 8 Cowen, 727; *Edgerton* v. *Page,* 1 Hilt. 320).''

In *Fifth Avenue Building Co.* v. *Kernochan* (221 N. Y. 370, 372) the court said: '' Eviction as a defense to a claim for rent does not depend upon a covenant for quiet enjoyment, either express or implied. It suspends the obligation of payment either in whole or in part, because it involves a failure of the consideration for which rent is paid. [*Royce* v. *Guggenheim,* 106 Mass. 202; *Lodge* v. *Martin,* 31 App. Div. 13, 14; 18 Halsbury Laws of England, Land-lord and Tenant, 479, 480, 482; Cruise Dig. of Real Property, title 28, ch. 3, sec. 1; Bacon Abridg., Rent L.; Woodfall Landlord & T. [19th ed.], 478, 486; and other cases cited.] We are dealing now with an eviction which is actual and not constructive. If such an eviction, though partial only, is the act of the landlord, it suspends the entire rent because the landlord is not permitted to apportion his own wrong.''

In relation to the third defense in action No. 1 against the National Refreshment Company and the fourth defense in action No. 6 against the same defendant, among other things, it is alleged that the plaintiff without the consent of the surety required the defendant to rearrange its business so as to separate the sale of its periodicals from the sale of confectionery. These allegations are sufficient to permit defendant to introduce evidence at the trial tending to show that this change in the contract materially interfered with the amount of the sales of defendant. To this extent it is impossible summarily to dispose of this portion of the answer.

Both parties appear to assume that, despite the acts of the plaintiff, the licensee continued to exercise the privileges until wholly evicted some years later by the plaintiff. The respondent urges that because of such acquiescence by the principal the surety is likewise without defense. The contrary is the fact. It is this very acquiescence on the part of the principal which extends the agreement in the original contract, thus exonerating the surety.

It follows that the orders appealed from should be modified by denying the motions to strike out the defenses indicated, and as so modified affirmed.

McAvoy, J., concurs.

In each action: Order affirmed, with ten dollars costs and disbursements.