(96 App. Div. 236.)

SMITH v. BARBER.

(Supreme Court, Appellate Division, First Department. July 13, 1904.)

1. LANDLORD AND TENANT—FAILURE TO GIVE ENTIRE POSSESSION—RIGHTS OF TENANT.

Under a lease providing that the tenant should have possession of all the demised premises at a certain date, but with which the landlord was unable to comply because another tenant was in possession of a portion of the premises, the incoming tenant was not bound to enter a portion of the premises which would have been of no use to him for the purpose for which the lease was made.

**2. SAME—LIABILITY FOR RENT.**

Where a tenant under his lease obtained the right to use the entire demised premises on a certain date in the future, but was prevented from so doing by the failure of the landlord to cause the removal of another tenant, who was occupying a portion of the premises under a valid lease, the mere acceptance of the lease does not render the incoming tenant liable for rent for the time he was not in actual possession of any portion of the premises.

**3. SAME—BREACH OF CONDITIONS—ELECTION OF REMEDIES.**

A lease provided that the tenant should have the entire demised premises on a certain date in the future. Another tenant of the landlord being in possession of a portion of the premises, the incoming tenant notified the landlord, in advance of the time his lease was to begin, that he would require the tenant in possession to vacate, but no action was taken by the landlord to comply with the notice, and a portion of the premises was still occupied by the tenant in possession when the incoming tenant's lease was to begin. *Held*, that the incoming tenant was put to his election, on the date when the term was to begin, either to notify the landlord of the termination and cancellation of the lease, or to waive his right to obtain complete possession of all the premises on that date.

**4. SAME—PARTIAL POSSESSION—PAYMENT OF RENT.**

Where a tenant, entitled under his lease to possession of the whole of the demised premises, enters into possession of a portion thereof, he cannot refuse to pay rent for the whole, but his remedy is either by way of counterclaim to the original action for rent, or by way of an independent action for damages.

**5. SAME—POSSESSION—ACCEPTANCE—PROOF.**

Slight facts tending to show a dealing with the demised premises by the tenant are sufficient to prove the taking of possession by him.

**6. SAME—ACTUAL ENTRY—EVIDENCE—ADMISSIBILITY.**

In an action on a lease to recover rent for the time that the tenant was not in possession after the term of the lease began, it appeared that the premises were obtained by defendant for the use of a trust company with which defendant was connected, and which was in process of organization at the time of the execution of the lease in September, the term of which was to begin February 1st following, and that the landlord agreed to assume a portion of the cost of fitting up the premises for the trust company's use. *Held*, that proof that defendant and other persons interested in the trust company made contracts for the fitting up of the offices and letting a portion of the premises, based on the assumption that possession would be obtained at the time provided in the lease, was inadmissible to show actual entry on the premises on February 1st.

**7. SAME—RESCISSION.**

The evidence was also inadmissible to show that on the date the lease was to begin defendant waived his right to rescind the lease.

Appeal from Trial Term, New York County.

Action by William W. Smith against Amzi L. Barber. From an order setting aside a verdict for plaintiff and granting a new trial, plaintiff appeals. Affirmed.

The plaintiff in this action sought to recover from the defendant seven monthly payments of $3,125 each, amounting in the aggregate to $21,875, under a lease covering a portion of the first and second floors of the premises No. 7 Wall street, this city, for the seven months beginning with February 1, 1900; and also the sum of $11,068.73, the cost in excess of $4,000 of fitting up the demised premises. The defendant admitted the making of the lease, and that he had not paid the rent, and averred that he had no knowledge as to the cost of fitting up the premises. As an affirmative defense, he alleged that by a covenant of the lease the plaintiff had agreed to fit up the premises in a manner suitable for the transaction of a banking and trust company business, and to

give the defendant possession on the 1st of February, 1900; that the premises were not properly fitted up; and that possession was not delivered to the defendant on the said date. The answer also contained a counterclaim for damages for failure to give possession, but this was abandoned upon the trial.

The facts show that in the fall of 1899 the defendant was engaged with several others in the effort to organize a trust company in this city, and that at a meeting of the incorporators held on the 26th day of September, 1899, the defendant was authorized to close negotiations for the renting of certain offices on the first and second floors of the building No. 7 Wall street. Thereafter, on or about the 27th day of September, 1899, the defendant entered into a lease of the described premises for the period of 10 years beginning February 1, 1899, at a yearly rental of $37,500, payable monthly in advance. The lease provided that the premises should be used for the business of the trust company, and for no other purpose, and that the plaintiff was to fit them up in a suitable and proper manner, the cost of which in excess of $4,000 was to be paid by the defendant. The lease contained the usual covenant that the tenant should quietly have, hold, and enjoy the premises for the term of the lease.

At the time the parties entered into the lease a portion of the first floor of the premises covered by the lease was occupied by Selisberg & Co. Subsequent to the making of the lease, and on the 10th of November, 1899, the incorporators of the proposed trust company met and appointed the defendant and two other members of the organization committee, Mr. Morrison and Mr. Dunn, a subcommittee to attend to the furnishing of the offices. The plaintiff was notified that the defendant would require Selisberg & Co. to vacate the premises on the 1st of January, 1900, but, so far as appears, did nothing with respect to such notice. That company occupied the premises under an oral lease from the plaintiff until May 1, 1900, and such occupancy delayed the completion of the premises, and some of the work could not be finished until they vacated on that date.

The plaintiff, to meet the claim that the defendant had been kept out of possession by the Selisbergs, introduced much evidence of the conduct of the defendant and of Dunn in making contracts both prior to and after the 1st of February, 1900, in fitting up the leased premises.

Upon the trial, it being in effect conceded that the plaintiff could not give actual possession of the entire premises leased on February 1, 1900, the issue was presented whether the defendant had waived the plaintiff's inability to do so, and this, together with the issue as to the cost of fitting up the premises, were the questions for the determination of the jury. The jury having found in favor of the plaintiff for the full amount, the trial judge, on motion for a new trial, set aside the verdict, and it is from the order entered upon such motion that the plaintiff appeals.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and LAUGHLIN, JJ.

Austen G. Fox, for appellant.

William W. Niles, for respondent.

O'BRIEN, J. The plaintiff's contention is that on the undisputed facts he was entitled to a direction of a verdict in his favor, and that therefore the trial court was not justified in setting aside the verdict. If the plaintiff is right in this contention, it·is certain upon the facts that injustice will be done the defendant, because concededly, as the result of Selisberg & Co. occupying a portion of the premises under a lease from the plaintiff—which occupancy necessarily interfered with the ability or legal right of the defendant to obtain possession of all of the demised premises, and delayed their being suitably fitted up and ready for the purposes of the trust company, for which they were hired—the defendant was unable to enter the premises on February 1, 1900, in accordance with the provisions of the written lease.

The appellant insists, however, that "it is the acceptance of the lease, not the acceptance or occupation of the premises, that creates the liability under a covenant to pay rent"; and in support of this proposition, which is sound, reference is made to the case of Mechanics' Ins. Co. v. Scott, 2 Hilt. 550, wherein we find the rule thus stated:

"The extent of his [landlord's] implied engagement is that he has a good title and can give a free and unincumbered lease for the term demised, and if the defendant is kept out of possession by the act of any party other than the landlord, or one having or holding under another having a paramount title, he must resort to his proper remedy to get possession under his lease."

While the plaintiff, therefore, was not bound, after the acceptance by the defendant of the lease, to place the defendant in actual possession of the demised premises, he was bound to give him a legal right of entry, unincumbered by any act of his (the plaintiff's). As we view the rights of the parties under the law and the decisions bearing upon the relation of landlord and tenant, the plaintiff having agreed to give the defendant the legal right to possession on February 1, 1900, and it not being disputed that he could not give possession of all the demised premises, the defendant was not bound to enter into a portion of the premises which would have been of no use or benefit for the purposes for which the lease was made. The acceptance of the lease, therefore, under which the defendant obtained the right to the use of the entire premises from the 1st of February, did not render him liable for the rent, where a substantial portion thereof was held by another tenant under a valid lease from the plaintiff, and where, as here, the defendant never went into actual occupancy of any portion of the premises. Having notified the plaintiff of the obligation resting upon him of getting Selisberg & Co. out, and no action having been taken, so far as appears, by the plaintiff to that end, the defendant, had he so elected, would have had the legal right on the 1st of February to notify the plaintiff that he regarded the lease as terminated and canceled. Upon that date, when the term was to begin, the defendant was legally put to his election, and it was entirely competent for the plaintiff to show, as was attempted to be shown, that not only had the defendant not elected to terminate the lease, but that his acts were such that they are to be legally construed into a waiver of the condition precedent to his liability for rent, namely, his obtaining complete possession.

The further legal question is presented as to whether, assuming that the undisputed facts proved that there was a waiver of the condition precedent, or an election to go on under the lease, the plaintiff was entitled to recover for the months during which actual occupancy was not had, and during which Selisberg & Co. remained in that portion of the building which had been leased to them. Where a person enters into possession of a portion of premises, he is liable for the rent of the whole, and if he has not full possession he cannot refuse to pay the rent, but his remedy for his damages "arising from the failure to receive full possession [is] either by way of counterclaim to the original action for rent, or by way of an independent action." O'Brien v. Smith (Sup.) 13 N. Y. Supp. 408, affirmed 129 N. Y. 620, 29 N. E. 1029. Here the counterclaim for damages was abandoned upon the

trial, and if by competent evidence it had been shown that the defendant took possession of a portion of the premises, then the plaintiff would be legally entitled to the whole rent, and the defendant's remedy would be by separate action to recover his damages. We recognize that under the authorities slight facts tending to show a defendant's dealing with the premises are sufficient to prove the taking of possession by him. Thus entry on the land, the putting up a notice to rent, or the making of repairs, have been held sufficient to establish the fact of entry and actual occupation. Upon this question, however, of entry on the premises, we think that all the evidence—and there was much of it introduced by the plaintiff—which related to what was done by the defendant or by Dunn, who was associated with him as a member of the committee of the trust company prior to the 1st of February, 1900, was incompetent. Having obtained the lease in September, 1899, which was to begin on February 1, 1900, it was entirely proper for the defendant, or for others who, in connection with the trust company, were finally to obtain the benefit of the lease, to make contracts for fitting up the offices so as to co-operate in having them ready for the trust company's business when the lease should begin. Such evidence, however, had no bearing on the questions of whether defendant on February 1, 1900, waived his right to rescind the contract, or thereafter so acted with reference to the premises that the jury could have inferred that by assuming dominion over the premises he had thus elected to continue in possession under the lease. Evidence, therefore, that the defendant, or that Dunn, acting under his instructions or as a member of the committee, had given orders for the ironwork or for the letting of a portion of the premises, all based upon the assumption that possession would be obtained on the 1st of February, 1900, could have no material bearing upon the question of waiver, or of actual entry upon the demised premises. The effect of such evidence upon the jury we are not able to determine, nor are we able to say that, excluding all such evidence, which in our view was erroneously admitted, there would remain in the case sufficient to justify the direction of a verdict in plaintiff's favor. Without, however, determining that point, our conclusion, in view of the course which the trial took, and the amount of evidence which was improperly admitted, and the erroneous theory upon which the case was submitted to the jury, is that the learned trial judge very properly, in the interests of justice, exercised his discretion in setting aside the verdict and granting a new trial, and that with the order so entered we should not interfere.

It follows, accordingly, that the order appealed from should be affirmed, with costs. All concur.