(112 App. Div. 187)

### SMITH v. BARBER.

(Supreme Court, Appellate Division, First Department. April 6, 1906.)

1. LANDLORD AND TENANT—LEASES—POSSESSION—OBLIGATION TO PAY RENT.

The obligation of a tenant to pay rent after the beginning of the term does not depend on his possession of the demised premises. If he acquired perfect title thereto by virtue of the lease, which would include the right of possession, he is liable for rent under his covenant to pay the same, regardless of whether or not he actually obtained possession.

[Ed. Note.—For cases in point, see vol. 32, Cent. Dig. Landlord and Tenant, §§ 751–754.]

2. SAME—POSSESSION BY THIRD PERSON.

Where at the beginning of the term of a lease a third person is in possession of the premises, claiming under title paramount to that of the lessor, a tenant thereby excluded from possession is not liable for rent under a covenant in the lease.

[Ed. Note.—For cases in point, see vol. 32, Cent. Dig. Landlord and Tenant, §§ 751–754.]

Exceptions from Trial Term, New York County.

Action by William Wheeler Smith against Amzi L. Barber. Motion for new trial on exceptions. Exceptions sustained, and new trial ordered.

See 89 N. Y. Supp. 317.

Argued before O'BRIEN, P. J., and McLAUGHLIN, INGRA-HAM, CLARKE, and HOUGHTON, JJ.

Austin G. Fox, for plaintiff.
W. W. Niles, for defendant.

INGRAHAM, J. The action was brought to recover the rent reserved by a lease, whereby the plaintiff leased certain premises to the defendant, together with the costs of certain improvements on the premises, which was, under the lease, to be paid by the tenant. On the trial the court excluded evidence offered by the defendant to sustain the defense set up in the answer, and directed a verdict for the plaintiff. Exceptions were taken to these rulings and they were ordered to be heard here in the first instance. The lease is annexed to the complaint. By it the plaintiff leased to the defendant the office on the first floor fronting on Wall and New streets, and a portion of the second floor fronting on Wall and New streets, in a building in course of erection at the corner of Wall and New streets in the city of New York, to be used as offices for the business of the Equitable Trust Company, and for no other purpose, "beginning February 1, 1900, and expiring May 1, 1910, at a yearly rental of thirty-seven thousand five hundred (37,500) dollars," payable in equal monthly payments in advance. The lease provided:

"No compensation or claim shall be made by the tenant by reason of inconvenience or annoyance arising from the necessity of repairing any portion of the building; however the necessity may occur. * * * And it is further understood and agreed that the landlord will fit up the herein demised premises in a proper and suitable manner for the transaction of a banking and trust company business, the cost of which in excess of the sum of four thousand (4,000) dollars is to be paid by the tenant. * * * And it is further understood and agreed that the landlord gives the tenant the option of renting the balance of the said second floor at the rate of seven (7) dollars per foot for a term running concurrently with that hereby granted, on receiving notice from the said tenant of such desire to hire on or before the first day of January, 1900; it being understood and agreed, however, that should the firm of Seligsberg & Company, now occupying a portion of the first floor, desire to rent said balance of the second floor prior to January 1, 1900, the option shall become null and void without recourse against said landlord. And it is further understood and agreed that the tenant shall have the privilege of occupying that portion of the second floor which is now tenantable at the rate of seven (7) dollars per foot, until such time as the hereinbefore mentioned premises are completed, and occupation tendered to the tenant by the landlord."

This lease was dated September 27, 1899, and the term was to commence on February 1, 1900. The action was brought to recover the rent from February 1, 1900, to September 1, 1900, and also for the cost of fitting up the demised premises in excess of the sum of $4,000, to wit, $11,068.73.

The answer admits the making of the lease, that the defendant had paid no part of the rent, denies knowledge or information as to the cost of fitting up the premises, and alleges that at the time of the execution of the lease the building referred to in said agreement was a new building in process of construction, and was not ready for occupancy; alleges that on the 1st day of February, 1900, and for a long time thereafter, the plaintiff was in possession of the said premises by his tenants,

agents, servants, contractors, and employés, engaged in the construction, completion, and fitting up of the same, and that the said premises were not completed or fitted up in the manner covenanted in the lease, or at all, on the 1st day of February, nor until long after, to wit, after the 1st day of June, 1900, and that the plaintiff did not tender to the defendant possession of said premises on the 1st day of February, nor until long after, to wit, after the 1st day of June, 1900, and that the defendant did not accept or take possession of said premises at any time. For a separate defense the defendant denies that the plaintiff did fit up the said demised premises in a proper and suitable manner for the transaction of a banking and trust company business, and as a counterclaim the defendant alleges a breach of the plaintiff's covenants, and a failure to furnish and fit up the said demised premises according to said agreement, or to give possession of the same to the defendant on the 1st day of February, 1900, and that the defendant has been greatly injured, to his damage in the sum of $100,000, and demands judgment for that amount.

The plaintiff served a reply to this counterclaim, but on the trial the counterclaim was withdrawn. On the trial the plaintiff was allowed to amend his complaint, and subsequently the defendant was allowed to amend paragraph 11 of his answer so as to read as follows:

"That the plaintiff wholly failed and neglected and refused to perform each and every of his covenants and agreements above alleged in subdivisions 7, 8, 9, and 10 of this amended answer."

—And paragraph 12 of his answer so that the same read:

"That on the first day of February, 1900, and for a long time thereafter, plaintiff was in possession of said premises by his tenants, agents, servants, contractors, and employés, engaged in the construction, completion, and fitting up of the same. That said tenants in possession of said premises held the same under a lease made by the plaintiff to them prior to the making of the lease annexed to the complaint herein, and said tenants were holding such possession under title paramount to the defendant herein, and the plaintiff thereby excluded the defendant from possession of a portion of the demised premises."

On the trial the defendant admitted that the rent sued for had been demanded and not paid. The following facts were then stipulated by counsel:

"At the time the parties to this action entered into the lease, a portion of the first floor of the premises covered by the lease was occupied by Seligsberg & Company. Said lease had been made by the plaintiff to Seligsberg & Company on or about May 1, 1899, for a term expiring May 1, 1900. The lease was an oral lease. The plaintiff was notified that the defendant would require Seligsberg & Company to vacate the premises on the 1st of February, 1900. The occupancy of the premises by Seligsberg & Company delayed the completion of the improvements in the premises, and some of the work could not be finished until they vacated on that date. The improvements made by the plaintiff in fitting up the premises pursuant to the lease herein were not completed on February 1, 1900, and not until about the 1st of June, 1900, when they were completed."

The plaintiff, while conceding these facts, objected to their competency under the answer, and this objection was sustained, and defendant excepted. The plaintiff then proved that the total cost of fitting up the offices for a trust company business was $15,723.48. The

defendant, on cross-examination, sought to prove by the plaintiff that Seligsberg & Co. were in occupation of the premises from February 1st to May 1st under a lease made by plaintiff prior to the execution of the lease to defendant; and that the occupation of the said premises prevented the completion of the premises on the 1st of February, 1900. This was objected to, the court sustaining the objection upon the ground that there was no defense set up in the answer which justified the evidence. This evidence being excluded, the defendant rested, and moved to dismiss the complaint, which motion was denied, and the court then, on motion of the plaintiff, directed a verdict for the plaintiff for the full amount, including the amount from February 1st to September 1st, being seven months, and the cost of fitting up the building for a banking office, and to this the defendant excepted.

The real question presented on this appeal is whether the defendant was entitled to prove as a defense to the action that the improvements upon the premises were not completed prior to February 1, 1900, and that from February to May, 1900, other tenants were in possession of the premises leased to the defendant under an oral lease made by the plaintiff prior to the execution of the lease in question for one year from May 1, 1899. This case was before this court upon a former appeal from an order setting aside a verdict in favor of the plaintiff, and granting a new trial. 96 App. Div. 236, 89 N. Y. Supp. 317. Although there was some discussion in the opinion as to the rights of the plaintiff and the defendant under this lease, it does not seem that that question was decided. The court held that certain evidence which was admitted had no bearing upon the question of whether the defendant on February 1, 1900, waived his right to rescind the contract, or thereafter acted with reference to the premises so that the jury could have inferred, by assuming dominion over the premises, he elected to continue in possession under the lease; that, in view of the course which the trial took, the evidence which was improperly admitted, and the erroneous theory upon which the case was submitted to the jury, the conclusion was that the trial judge was justified in setting aside the verdict, and granting a new trial, and that order was therefore affirmed. The court, however, in discussing the question as to the liability of the defendant for this rent, said:

"The acceptance of the lease, therefore, under which the defendant obtained the right to the use of the entire premises from the first of February, did not render him liable for the rent, where a substantial portion thereof was held by another tenant under a valid lease from the plaintiff, and where, as here, the defendant never went into actual occupancy of any portion of the premises. Having notified the plaintiff of the obligation resting upon him of getting Seligsberg & Company out, and no action having been taken, so far as appears, by the plaintiff to that end, the defendant, had he so elected, would have had the legal right on the first of February to notify the plaintiff that he regarded the lease as terminated and canceled. Upon that date, when the term was to begin, the defendant was legally put to his election; and it was entirely competent for the plaintiff to show, as was attempted to be shown, that not only had the defendant not elected to terminate the lease, but that his acts were such that they are to be legally construed into a waiver of the condition precedent to his liability for rent, namely, his obtaining complete possession."

The court then says:

"Where a person enters into possession of a portion of the premises, he is liable for the rent of the whole; and if he has not full possession he cannot refuse to pay the rent, but his remedy for his damages arising from the failure to receive full possession is either by way of counterclaim to the original action for rent, or by way of an independent action."

The observation here would seem to indicate that it was the opinion of the court that the defendant would be liable for rent for the period, unless he proved that he elected to terminate the lease. The law in this state in relation to the obligation of the tenant to pay rent after the beginning of the term does not depend upon the possession by the tenant of the demised premises. If the tenant acquire a perfect title to the premises by virtue of the lease, which would include the right of possession, then he is bound under his covenant to pay rent, regardless of the question whether or not he actually obtained possession of the premises. Gardner v. Keteltas, 3 Hill, 330, 38 Am. Dec. 637, where Nelson, Chief Justice, says:

"All that either of the covenants mentioned exact of the lessor is that he shall have such a title to the premises at the time as shall enable him to give a free, unincumbered lease for the term demised. There is no warranty, express or implied, against the acts of strangers. Hence, if the lessee be ousted by one who has no title, the law leaves him to his remedy against the wrongdoer, and will not judge that the lessor covenanted against the wrongful acts of strangers, unless the covenant be full and express to the purpose. * * * I admit the covenant of quiet enjoyment means to insure the lessee a legal right to enter and enjoy the premises, and if he is prevented from entering into the possession by a person already in under a paramount title the action may be sustained. That was decided in Ludwell v. Newman, 6 T. R. 458. In such a case no ouster or expulsion is necessary on which to predicate a suit, as the lessee is not bound to enter and commit a trespass."

This rule is further explained by first Judge Daly in Mechanics' & Traders' Fire Insurance Company v. Scott, 2 Hilt. 550, where the learned judge says:

"The fourth answer sets up no defense. The complaint avers that the plaintiffs leased the premises to the defendant on the 6th day of March, 1858, for one year, to commence on the 1st of May following. This vested in the defendant an interest in the term on the 1st of May, and rendered him liable, after that date, for the payment of the rent. Whitney v. Allaire, 1 N. Y. 311. It is no answer that he never had possession. Bellasis v. Burbriche, Lord Ray, 170, Holt, 199; Eaton v. Jaques, 1 Doug. 461. He avers that at the time of the agreement there was a tenant in possession, and that the same tenant is still in possession. This is no answer. It may be a tenant under a demise from some person having no claim or title to the premises. To render an occupancy of a tenant an answer to the demand for rent the defendant must aver that the tenant is in possession under a title paramount to that of the plaintiff."

In Trull v. Granger, 8 N. Y. 115, the defendant gave the tenant a lease of certain premises on the 6th day of September, 1849, the term to commence on the 1st day of May, 1850. The defendants leased the premises to another person for five years, and he went into possession. On the 1st day of May the plaintiff called on the defendants, tendered them the rent for one quarter in advance, and required the possession of the premises. He thereupon brought action for damages, and it was held that that action could be maintained. The court said:

"In the present one the lessors themselves denied the right, and refused to permit the plaintiff to occupy, in accordance with their own lease. In such cases it seems to me very obvious that the lessee should not be driven to his ejectment, but should be allowed to bring his action for the damages sustained."

It is quite evident, under such circumstances, that the action by the landlord for rent under the lease would not lie. In Harris v. Greenberger, 50 App. Div. 439, 64 N. Y. Supp. 136, this court in the Second Department held in a proceeding to dispossess a tenant that where the former tenant of the landlord was in possession of the premises, and insisted in holding over after the expiration of the tenancy, and thus prevented the landlord from putting the tenant in possession, the tenant was relieved from further liability under the lease. That decision rested on the peculiar language of the lessee, which provided for the payment for rent before the possession of the premises were delivered to the tenant; and the court said:

"We think that this language imported an undertaking on the part of the landlords to deliver actual possession at the time when the tenant handed them his check for the rent. The evidence demonstrates their inability to do so, and their failure in this respect relieved the respondent from further liability upon the lease for any purpose. This result is only just. The proof indicates that the landlords themselves were concerned in preventing the respondent from storing his goods on the premises before the beginning of the term, as provided for in the lease; and the evidence in regard to their presence and conduct on the premises when the respondent was kept out goes far towards creating the impression that they co-operated in the exclusion of the respondent, or at least tacitly gave it their sanction."

In 18 Amer. & Eng. Encyclopedia of Law (2d Ed.) 615, it is said:

"The lessor impliedly covenants to give possession to the lessee at the commencement of the term, * * * and, if the premises are wrongfully withheld by a third person, it is the duty of the lessor to oust him; or, which amounts to the same thing, the failure to give possession has been held a breach of the lessor's covenant of quiet enjoyment. Same volume, p. 325. Where the landlord delivering possession of part only of the premises, and tenant does not accept such part as a full performance by the landlord, * * * a landlord cannot recover upon the express agreement to pay rent." 1 McAdam, L. & T. p. 340.

These cases all recognize the rule that where a third party is in possession of the demised premises, claiming possession under a title paramount to the title of the lessor, and the tenant is thereby excluded from possession of the premises, there can be no recovery for rent under the covenant in the lease. The amendment of the defendant's answer, whereby the defendant as a defense alleged that the tenants in possession of the premises held the same under a lease made by the plaintiff to them prior to the making of the lease to the defendant, and that the said tenants were holding such possession under a title paramount to the defendant herein, and plaintiff thereby excluded the defendant from a portion of the premises, was a good answer for a demand for rent of the premises during the period that the defendant was excluded from the premises. It was, therefore, competent for the defendant to prove under this answer that at the time the term commenced the premises were occupied by Seligsberg & Co. under a lease from the plaintiff which extended to the 1st of May, three months after the defend-

ant's term commenced, and that the defendant never occupied these. leased premises.

I think, therefore, that the exceptions should be sustained, and a new trial ordered, with costs to the defendant to abide the event. All concur.

