THE CITY OF NEW YORK, Plaintiff, *v.* PIKE REALTY CORPORATION, Defendant.

Supreme Court, New York County, December 28, 1925.

Landlord and tenant — action by city of New York to recover rent for lease of space under Manhattan bridge — provision in lease permitted erection of " fireproof warehouse and garage on property * * * subject to approval of commissioner of plant and structures " — commissioner refused to approve plans for two-story garage — actual eviction — defendant justified in refusing to pay rent — counterclaim predicated on breach of covenant of quiet enjoyment dismissed in absence of evidence of rescission of lease.

A lease of premises which provides that the tenant may erect a " fireproof warehouse and garage on the property * * * all construction to be subject to the approval of the commissioner of plant and structures," authorizes the erection of a garage, since said structure is a special kind of warehouse for the storing of automobiles.

Accordingly, the defendant herein, having executed a lease of space under the Manhattan bridge which recites the aforesaid provision, is justified in refusing to pay the rent of the premises, where the commissioner of plant and structures of the borough of Manhattan has declined to approve defendant's plans for a two-story garage, since the depriving the defendant of the use of the premises specifically within the contemplation of the parties upon the execution of the lease is for all practical purposes an actual eviction.

However, defendant's counterclaim predicated upon a breach of the covenant of quiet enjoyment should be dismissed, since there is nothing to show rescission or abandonment of the lease on defendant's part.

ACTION to recover rent for space under the Manhattan bridge.

*George P. Nicholson,* Corporation Counsel [*Samuel Plumer,* Assistant Corporation Counsel, of counsel], for the plaintiff.

*Lester M. Friedman,* for the defendant.

LEVY, J.   This is an action which was tried by the court without a jury pursuant to the usual Trial Term, Part III, stipulation, and was brought by the city of New York to recover for rent for the use of certain space under the Manhattan bridge leased by

the defendant for a term of ten years. Quarterly installments were provided for under a written lease beginning August 26, 1923, each in the sum of $3,287.50. The rent due for the first quarter was paid, but the other installments have been refused, and it is for these that recovery is sought. The defense is that the lessee was prevented from using the premises by the unreasonable refusal of the commissioner of plant and structures to approve plans for a public·garage by reason of which the defendant has been unable to enjoy the same, with a consequent claim on its part that the rent became suspended. There is also a counterclaim for $100,000 claimed to arise from the breach of covenant of quiet enjoyment.

The lease provided that the defendant might erect a " fireproof warehouse and garage on the property    *    *    *    all construction to be subject to the approval of the Commissioner of Plant and Structures and by the Bureau of Buildings of the Borough of Manhattan." It further required that no improvement should be made on the property without like written consent. It is fairly clear, from a reading of the instrument, that the intendment of the lease contemplated the improvement of the premises by the lessee, which, however, as to plans required the written consent of the commissioner; and that the use of the premises for a " warehouse and garage " was the dominant purpose of the parties. Plans for such a structure were submitted on June 26, 1923, but were rejected, for reasons which may be assumed as adequate. On November 19, 1923, seven days before the next quarter's rent became payable, new plans for a two-story garage were filed which the commissioner of plant and structures refused to approve, because he interpreted the lease to limit the construction to a warehouse with incidental garage facilities.

As the words are used in the lease, they must be construed in the sense in which they are commonly understood and as the standard dictionary definitions voice, and we may resort to them for light on the subject. The Standard Dictionary defines " garage " as a building for the storage of automobile vehicles. All the dictionaries make " storehouse " and " warehouse " synonymous. Since the garage is a storehouse of automobiles, it is a special kind of warehouse, and its erection is authorized by the lease. Should the reason be asked for adding the word " garage " when it was already comprehended in the larger term " warehouse," a likely explanation would be that the former type of structure includes the possibility of storage of combustible fuel for automobiles — a privilege deemed to be embraced within the term " garage." Again, it may be argued that the very necessity of a low structure by

reason of the overhead bridge and the resultant previous rejection of plans for a three-story building, would negative any view that the privilege was intended to be confined exclusively to a warehouse of the type familiar in our city, where the term " fireproof storage warehouse " connotes a building of at least medium height for the storage of goods and materials.

If, however, arguments may plausibly be brought forth in support of the interpretation that such a structure was intended, I must nevertheless adopt a view most favorable to the lessee following the familiar canons of construction applicable in such cases, for the reason that the instrument in question was drawn by the plaintiff. As was said in *Robinson* v. *Beard* (140 N. Y. 107, 114): " It is right that the construction should be strictly against the lessor in such a case; for thereby a perfectly just result is reached, which is in accord with the circumstances and probabilities of the case. In the construction of this, as of every other instrument, it is not a question of whether better and apter language could have been used to express the intentions of the parties; but whether they are so clearly inferable from the whole instrument as to outweigh the difficulties arising from the inartificial, and possibly inadvertent, use of words and phrases and a nicety of reasoning to prevent their effectuation."

The willful deprivation by the lessor of the very use of the premises specifically within the legal contemplation of the parties, is for all practical purposes an actual eviction, although not accompanied by an act of physical expulsion. It is not, as in a constructive eviction, the creation by the lessor of a condition in respect to the property which renders impossible the lessee's full or adequate use of it, but a deliberate and forcible act of trespass on the lessee's right of enjoyment. Under these circumstances I must hold that the defendant is justified in refusing to pay rent as long as such a condition continues.

I find some difficulty, however, with the defendant's counterclaim for breach of the covenant of quiet enjoyment. There is no evidence of rescission or abandonment of the lease on the lessee's part. The very defense of the suspension of rent implies the continuity of the conventional relation of landlord and tenant. Until the tenant terminates the present state of events, virtually an impasse, and elects to rescind the contract, no intelligent or proper computation of his damages under such counterclaim can be made. Judgment is, therefore, directed for the defendant dismissing the plaintiff's complaint on the merits, with costs, and the counterclaim of the former is also dismissed, but without prejudice.