THE CITY OF NEW YORK, Appellant, *v.* PIKE REALTY CORPORATION, Respondent.

Landlord and tenant — lease — New York city — lease by city of vacant property for public garage — refusal of Commissioner of Plant and Structures to permit erection — lessee must pay rent if it retains possession — holding, in action by city for rent, that rent was suspended and dismissal of complaint erroneous — dismissal of counterclaim for damages for breach of covenant also erroneous — measure of such damage.

1. Where the city of New York leased vacant property under the Manhattan bridge " for a public garage " and thereafter the Commissioner of Plant and Structures refused to permit its erection, the lessee might have surrendered the lease and abandoned the premises, but, where it did not surrender or move out, it must pay the rent reserved and seek recoupment for the city's breach of contract.

2. In an action, therefore, by the city, to recover a balance of rent due under the lease, a holding that rent was suspended during the time the city prevented the lessee from erecting a garage and a dismissal of the complaint was erroneous. But a dismissal of defendant's counterclaim for damages resulting from the city's breach of covenant was also erroneous. As the damages grew out of the lease or contract sued upon they were a proper subject of counterclaim.

3. The damages are the difference in value of the leased premises for the use of a public garage and their value as vacant property, or, as the rent stipulated is evidence of the value of the property so used, the difference between the rent received and the value of the premises for the time. Loss of profits is not an element of damage.

*City of New York* v. *Pike Realty Corporation*, 220 App. Div. 824, reversed.

(Submitted January 13, 1928; decided February 14, 1928.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered June 30, 1927, unanimously affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term without a jury.

*George P. Nicholson, Corporation Counsel (J. Joseph Lilly* and *Samuel Plumer* of counsel), for appellant. The

defendant has no defense to the plaintiff's claim for rent due. (*Peerless Candy Co.* v. *Holbreich,* 125 Misc. Rep. 889.) There was no eviction of the defendant from the leased premises. (*Home Life Ins. Co.* v. *Sherman,* 46 N. Y. 370; *Boreel* v. *Lawton,* 90 N. Y. 293; *Edgerton* v. *Page,* 20 N. Y. 281.) The alleged refusal of the Superintendent of Buildings to approve the plans for the erection of a two-story public garage on the leased property does not furnish the defendant with any defense to this action. (*Metzroth* v. *City of New York,* 212 App. Div. 253; *McGuinness* v. *Allison Realty Co.,* 46 Misc. Rep. 8; 111 App. Div. 926; *Stubley* v. *Allison Realty Co.,* 124 App. Div. 162.)

*John Caldwell Myers, Benjamin F. Schreiber, John F. Keating* and *Lester M. Friedman* for respondent. The trial court correctly interpreted the lease. (*Bardisch* v. *Kalisch,* 118 Misc. Rep. 119; *Roome* v. *Phillips,* 24 N. Y. 463; *Osborn* v. *Wilson,* 118 Misc. Rep. 379; 206 App. Div. 787; *People* v. *Frudenberg,* 209 N. Y. 218; *Horton* v. *Horton,* 177 N. Y. Supp. 857; *Jackson* v. *Topping,* 1 Wend. 388.) The obligation of the respondent to pay rent was suspended. (*Grabenhorst* v. *Nicodemus,* 42 Md. 236; *Kaiser* v. *Zeigler,* 115 Misc. Rep. 281; *Doherty* v. *Monroe Eckstein Brewing Co.,* 115 Misc. Rep. 175.)

CRANE, J. We agree with the interpretation of the lease which has been given by the courts below. The respondent was entitled to erect a public garage upon the premises provided the plans and specifications in other particulars complied with the law and rules of the Building Department. Upon the refusal of the Commissioner of Plant and Structures to permit the erection of such a garage the respondent could have surrendered the lease and abandoned the premises. The city cannot constructively evict through one department of its government and recover full rent through another. The city and its officials for this purpose are one.

The trouble with the appeal, however, is that the respondent did not surrender or move out; it is still in possession and claims the right to possession, provided it can erect its garage. The law is so well settled regarding the respective rights of landlord and tenant that to affirm the ruling of the trial court would we fear create some confusion hereafter.

The trial court held that rent was suspended during the time that the city prevented the respondent from erecting a garage. This rule of suspension applies to partial physical evictions, not to constructive eviction. " If the landlord enter wrongfully upon or prevent the tenant from the enjoyment of a part of the demised premises the whole rent is suspended till the possession is restored * * *. A tenant shall not be required to pay rent, even for the part of the premises which he retains, if he has been evicted from the other part by the landlord." (*Christopher* v. *Austin*, 11 N. Y. 216. See, also, *Lewis* v. *Payn*, 4 Wend. 423, 427; *Sirey* v. *Braems*, 65 App. Div. 472; *Matter of Hall* v. *Irvin*, 78 App. Div. 107; McAdam Landlord & Tenant [4th ed.], p. 1381.) But the elementary rule in regard to constructive eviction is that the tenant must abandon the possession of the premises to the landlord, for he cannot claim that he has been forced to go out while he remains in. (*Edgerton* v. *Page*, 20 N. Y. 281, pp. 283, 284, 285; *Boreel* v. *Lawton*, 90 N. Y. 293, 297; Taylor Landlord & Tenant, sect. 379.)

There was no actual eviction in this case and none is claimed. The refusal of the city to approve the plans for a public garage was at most a breach of the covenants of the lease and a constructive eviction. (*Tallman* v. *Murphy*, 120 N. Y. 345; *Grabenhorst* v. *Nicodemus*, 42 Md. 236; *Talbott* v. *English*, 156 Ind. 299, 307; *Keating* v. *Springer*, 146 Ill. 481, 495, 496.) Consequently, the defendant not having abandoned the premises or surrendered the lease must pay the rent reserved and seek recoupment for the city's breach of contract. And such

was the position taken by the defendant in its pleadings. The judgment entered and not the pleadings has raised the difficulty.

The property leased was vacant property under the Manhattan bridge — room for a two-story building. The city, as ruled below, leased the land to the defendant for a public garage and then refused to permit its erection. The defendant paid the first quarter's rent. The city sues for the balance due. The defendant pleaded as a defense the refusal of the city to approve its plans for a garage, saying " that plaintiff, in breach of its covenants in said lease has not permitted the defendant to peaceably have, hold and enjoy the demised premises but has prevented the same." The same facts were pleaded as a counterclaim — damages being alleged. Nowhere in the answer is it alleged that because of such facts the lease has been surrendered, terminated or the premises abandoned. For all we know the defendant may still want the premises for a garage.

The trial judge in reserving decision at the end of the case finally gave judgment dismissing the complaint and also the counterclaim. He should have done just the reverse, sustained the complaint and also the counterclaim. Conceding under the above rule of law that the city could recover its rent reserved in the lease, the defendant could also recoup or set off its damages resulting from the breach of the covenant express or implied of the quiet enjoyment of the premises for a public garage. This is the purpose for which the property was leased and for which the rent was to be paid. It would be very strange if the city under these circumstances could recover the full rent and also illegally limit the use. For its unauthorized action it must take the consequences of no or of a reduced rent.

As the defendant's damages grew out of the lease or contract sued upon they are a proper subject of counterclaim or recoupment under our practice. (*Mayor* v.

*Mabie,* 13 N. Y. 151; *Edgerton* v. *Page,* 20 N. Y. 281, pp. 285, 286; Taylor Landlord & Tenant, sects. 374, 379.)

The damages would be the difference in value of the leased premises as they were to be, that is, for the use of a public garage — the purpose contemplated — and their value as they are — vacant property. The defendant was not supposed to use them for any other permanent purpose or building. (*Thomson-Houston Electric Co.* v. *Durant Land Improvement Co.,* 144 N. Y. 34, pp. 47–49.) Naturally the rent stipulated would be evidence of the value of the property when used for a public garage. When a lessor has failed to give possession or wrongfully withholds possession, the tenant need not resort to ejectment but may sue for damages. The measure of damages then is the value of the lease above the rent received or the difference between the rent received and the value of the premises for the time. Of course there would be no damage if the value was less than the rent. (*Trull* v. *Granger,* 8 N. Y. 115; *Dodds* v. *Hakes,* 114 N. Y. 260.) Here the lessee was in possession. The acts of the lessor materially lessened the value of the property leased, and the rule of the *Thomson Case (supra)* applies. (See, also, *Witherbee* v. *Meyer,* 155 N. Y. 446.) This is hardly a case where the loss of profits would be an element of damage within the law as stated in *Snow* v. *Pulitzer* (142 N. Y. 263).

The judgment should be reversed and a new trial granted on all the issues, with costs to abide the event.

CARDOZO, Ch. J., POUND, ANDREWS, LEHMAN and KELLOGG, JJ., concur; O'BRIEN, J., not sitting.

Judgment reversed, etc.