CARNEGIE HALL, INC., Appellant, *v.* JACOB ZYSMAN, Respondent.

First Department, May 12, 1933.

*Joseph M. Proskauer* of counsel [*Burgess Osterhout* with him on the brief; *Gleason, McLanahan, Merritt & Ingraham,* attorneys], for the appellant.

*Leon London* of counsel [*Franklyn Ellenbogen* with him on the brief; *Leon London,* attorney], for the respondent.

MARTIN, J. The final order and judgment entered in the Municipal Court, upon the verdict of a jury, awarded delivery of possession of leased property to the landlord, dispossessing the tenant for non-payment of six months' rent and in addition gave judgment to the landlord for $5,154.82 for the six months' rent in arrears under a written lease, less $1,156.25 on the tenant's counterclaims, or a net judgment in favor of the landlord for $4,080.57, with costs and disbursements.

On appeal the Appellate Term reversed the Municipal Court, and in a *per curiam* opinion said: " The tenant was entitled to plead the equitable defense (*DeVita* v. *Pianisani*, 127 Misc. 611), and it was the duty of the court below to submit the issue presented by such defense to the jury."

Two summary proceedings, one commenced in May, 1931, and the other in October, 1931, were tried together. They were brought to recover six months' rent, totaling $5,154.82, or, in the alternative, possession of the premises. The lease covered a store, basement and yard in the rear thereof in the premises known as Carnegie Hall, at 150 West Fifty-seventh street, Manhattan. It provided as follows:

" *Witnesseth,* that the landlord has agreed to let and does hereby let and demise unto the tenant, and the tenant has agreed to take and does hereby hire and take from the landlord the street store shown on the attached blue print and known and designated as Store No. 1, the dimensions on which are approximate only, of the building now known as 150 West 57th Street, in the Borough of Manhattan, City of New York, hereinafter called the ' premises ' to be used and occupied by the said tenant as a restaurant, tea room, confectionery and soda fountain, and for the sale of chocolates, cake, etc."

With reference to the yard in the rear of the building the lease provided:

" *Thirtieth.* Permission is hereby granted to the tenant to make such alterations in the window at the rear of the premises as to form an exit giving access to the yard in the rear of premises known as 153 West 56th Street, and to enter the yard in the rear of premises known as 153 West 56th Street and operate and maintain thereon an open air restaurant in conjunction with the premises herein demised. This permission is revocable upon 30 days' notice in writing given to the tenant as provided in Paragraph 16 hereof. Upon the revocation of this license, the tenant shall place the yard in the same condition as existed prior to his entry thereon, and upon his default in so doing the landlord may do so at the expense of the tenant."

On the trial the defendant admitted that the rent fixed by the lease had not been paid for six months but set up a counterclaim for damages and attempted at the opening of the trial to set up facts demanding a reformation of the lease. The new matter attempted to be pleaded is labeled "a further separate and distinct defense." However, the gist of this new matter is the tenant's claim that the lease was intended to include a greater amount of space; that because of mutual mistake, or fraud on the landlord's

part and mistake on the tenant's part, the lease as executed failed to set forth the true agreement between the parties. The court properly permitted the defendant to plead all these facts as a counterclaim and submitted the counterclaim to the jury, but refused to allow the amendment labeled as a defense. By this procedure the issues were correctly limited to a litigation of the counterclaim and defenses properly pleaded. Those were not only fully litigated but fully considered by both the court and jury.

The issues involved in the pleadings were placed before the jury in an exceptionally clear manner by the trial justice. He said: " The claim of the plaintiff being conceded, subject to the defenses and counterclaim of the tenant, you are to determine, as the court has stated, two questions; as to whether the tenant received the space provided in the lease, and if not, what damage, if any, the tenant has sustained."

That statement clearly and concisely placed before the jury the issues involved in this litigation. The court did not refuse to allow the defendant to plead any counterclaims or defenses which may be pleaded in a case of this kind. The court further said: " So, the first question you are to determine, is whether or not the tenant received the space described in the lease. If he did, that is the end of the case. If he did not receive the space described in the lease, then he is entitled to claim damages, which are measured by the rule that he would be entitled to the difference in rental value between the store with this space and the store without this space. In other words, the difference in rental value between the store as described in the lease and the store as conveyed to the tenant."

Throughout the trial the tenant insisted that he had a right to plead as an actual eviction the failure to obtain all the space contracted for by the parties. It was evident from the outset that there was no eviction of any kind. On this subject the court said: " This is not a case where a tenant has been evicted from a part of the premises conveyed to him. * * * It is a case where the tenant claims the landlord did not give him all that the lease provided."

The above quotations show that the court fully grasped the entire situation, was thoroughly familiar with the law on the subject and placed the matter before the jury in an exceptionally clear manner. (See *Smith* v. *Barber*, 96 App. Div. 236.)

An important feature of this case is the fact that the tenants' counsel in order to obtain the right to open and close, withdrew all his denials and litigated only the defenses which were properly pleaded. After a colloquy between counsel, the court said: " He

concedes that now. The tenant shall have the right to open and close, inasmuch as he now concedes the allegations of the landlord's petition."

The above statement was not only acquiesced in by the tenant's counsel but this procedure was suggested by him in his desire to open and close. The denials having been withdrawn, all that could be litigated were the defenses or counterclaims that had been pleaded, which were substantially to the effect that the amount of space that had been leased was not given to the tenant.

The equitable defense of the tenant, which the Appellate Term held should have been submitted to the jury in this summary dispossess proceeding for non-payment of rent, sought a reformation of the written lease in respect to the extent of the premises demised. The Appellate Term says the equitable defense should have been submitted to the jury. The jury could not reform the lease. A court of equity only would have such power.

During the pendency of the summary dispossess proceedings resulting in the judgment appealed from, the tenant had previously brought a suit in the Supreme Court, New York county, against the landlord, which suit is still pending, to reform the lease upon the same grounds for which reformation was asked by the so-called equitable defense; and the tenant also pleaded the pendency of the Supreme Court reformation actions as a defense to the summary dispossess proceeding.

There is no doubt that a tenant may in a proper case plead an equitable defense, but that is not the question here involved. In this case the defendant leased certain premises and now says that although he took possession, used the premises and paid rent for several years, the lease should be reformed because he did not receive all the space agreed to be given the tenant. There was no actual eviction from any part of the premises. (*City of New York* v. *Pike Realty Corp.*, 247 N. Y. 246; *Etheridge* v. *Osborn*, 12 Wend. 529.) The rent having become due, as provided in the lease, the tenant must pay or be dispossessed.

The defense which the Municipal Court refused to permit the tenant to set up at the trial was at times termed a defense of eviction and at other times termed a demand for a reformation of the lease. It was not sufficient for either purpose.

The defendant's difficulty here is that the alleged defense did not constitute a defense to his obligation to pay the rent provided for in the lease while he remained in possession. The tenant cannot now successfully contend that he had the right to remain in possession and pay no rent because of the facts which he sought to show by his alleged equitable defense, offered by way of amend-

ment to the answer at the trial, especially in view of the fact that with knowledge of the facts he remained in possession. The defense, if pleaded, would not defeat a judgment dispossessing the tenant for non-payment of rent.

The basis for jurisdiction to dispossess in this case was the holding over by the tenant after default in the payment of six months' rent. When a tenant fails to pay rent, he is not entitled to continue to occupy the demised premises and a final order may be issued awarding to the landlord delivery of possession. (Civ. Prac. Act, § 1430.) A claim that the lease does not demise all the property which the tenant contends should have been demised may be pleaded as a counterclaim, but it is not a defense or a bar to tenant's obligation to pay rent while he remains in occupation.

In *O'Brien* v. *Smith* (13 N. Y. Supp. 408; affd., 129 N. Y. 620) the court said (p. 409): " ' The omission of a landlord, therefore, to perform such covenant [*i. e.*, to put tenant in full possession of the agreed demise] does not amount to an eviction, and is no bar to the lessor's claim for rent. The lessee's remedy is by an action to recover damages for a breach of the covenant.' * * *

" There can be no doubt that the defendant's remedy, if he failed to receive full possession, was, as stated by Judge McADAM, by way of counterclaim or independent action. Having entered under the demise, he is liable on his covenant for the rent reserved."

In *Forshaw* v. *Hathaway* (112 Misc. 112) the court said: " If a landlord fails to give to his tenant possession of all that the letting calls for the tenant is not obliged to accept any portion of the premises. He may refuse to accept only a part. And if he does so the landlord could not compel him to pay any rent and the tenant would have an action against him for his damages. * * * The tenant has the option of refusing to take a portion of the premises or of taking the portion of which he can have possession. Electing to do the latter he takes it only under his lease and so obligates himself to comply with its terms. This makes him liable for the rent called for by the lease. And if he fails to pay that he may be sued for it or dispossessed." (See, also, *Douglas* v. *Chesebrough Building Co.*, 56 App. Div. 403.)

The determination of the Appellate Term should be reversed, with costs, and the judgment of the Municipal Court affirmed, with costs.

McAVOY, J., concurs; O'MALLEY, J., concurs in result; FINCH, P. J., and TOWNLEY, J., dissent and vote for affirmance.

TOWNLEY, J. (dissenting). The determination of the Appellate Term directing the Municipal Court to try out the equitable

defense of reformation should be affirmed. The Court of Appeals has held that while such matter should be pleaded as a ·counterclaim when affirmative relief is necessary, the court must hear the facts when set up as an equitable defense, provided that as a mere plea in bar, they would be sufficient to answer to plaintiff's claim. As was said in *Susquehanna S. S. Co.* v. *Andersen & Co.* (239 N. Y. 285, 291): " The question is fairly here whether the facts establishing the need for reformation, even if not stated as a counterclaim, make out an equitable defense. The plaintiff produces a writing which in form is a contract and asks the judgment of the court that it be enforced according to its terms. The defendant answers that enforcement is inequitable because fraud or mutual mistake has brought about the result that the writing is not a true expression of the meaning of the parties. This is good as a bar, and does not cease to be good because the defendant, if it had so chosen, might have asked for something more."

The result is not only supported by authority but is essential to the administration of summary proceedings in a court of limited jurisdiction. It is obvious that if the final order were affirmed, the tenant is remediless. A later judgment for reformation in the Supreme Court would not automatically set aside the final order. If by some subsequent litigation it could be set aside, the procedure would be cumbrous and lead to a very undesirable circuity of action.

Since the Municipal Court may determine equitable defenses and since the plea of reformation may be set up as an equitable defense, the trial court should have litigated the issue tendered by the tenant.

The determination of the Appellate Term should be affirmed.

FINCH, P. J., concurs.

Determination reversed, with costs and disbursements, and judgment of the Municipal Court affirmed, with costs.