Samuel A. Spiegel, J.
This is a proceeding by the landlord to dispossess for the nonpayment of rent for a store for the months of September, October and November, 1962, at $425 per month. Tenant refuses to pay the rent on the ground that the rent demanded by the landlord is unjust, unreasonable and oppressive, though it is the amount of rent fixed in the lease of 1960, on the ground that it exceeds the legal maximum fair and (reasonable emergency rent as determined by the provisions of the Emergency Business Space Rent Control Law (L. 1945, ch. 314, as amcL).
Tenant’s counterclaim alleging willful and intentional acceptance of excess rent was dismissed at the end of the trial upon landlord’s motion for failure of the tenant to produce any testimony to that end. This could have resulted in forfeiture of one month’s rent (see Emergency Business Space Rent Control Law, § 4, subd. 5; L. 1945, ch. 314, as amd. by L. 1950, ch. 326). Tenant’s counterclaim for loss due to damage of tools, equipment, fixtures, inventory, etc., was disposed of in another action and was therefore withdrawn.
The tenant asserts the defense that the emergency rent for his store should be $392.50 instead of $425 and counterclaims for return of the excess rent in the amount of $32.50 per month heretofore paid to the landlord. Pursuant to section 11 of the Emergency Business Space Rent Control Law, if the landlord has charged the tenant a rent in excess of the fair emergency rent then the tenant can recover the excess only for the 12-month period preceding the institution of his action.
It is also the tenant’s contention that due to leakage from rain he was obliged to suspend operations in the rear portion of *899 his store, thus creating a partial actual eviction from the demised premises. Under subdivision (b) of section 7 of the Emergency Business Space Rent Control Law (L. 1945, ch. 314, as amd. by L. 1953, ch. 452) the court may take evidence as to loss of use when a tenant interposes a defense ‘ ‘ that the rental value of the business space has been reduced by reason of an unreasonable diminution of services by the landlord, and to the extent that the court shall find that such services have been so diminished, the value thereof shall be allowed in reduction of the rent charged ”. The tenant, pursuant to such section, also requests injunctive relief to restrain the landlord from taking any action to collect the rent until the landlord will have made the necessary repairs and restored the services to which the tenant is entitled. The tenant also counterclaims for the return of the rent paid for the months of April, June, July, August and September, 1962, during which months tenant claims he was partially evicted from the premises. Landlord asserts that all the necessary repairs were made to the roof in July, 1962, and that since then there has been no water seepage or leakage.
The landlord contends that he is collecting only the proper emergency rent due. To substantiate this he offered testimony that the increased rent was fixed by the required rental agreement which had been executed simultaneously with the lease in March, 1960. He states that since the prior landlord did not turn over to him the executed agreement in which the increased rent was fixed, when the change of ownership took place, he cannot produce it in court.
It is undisputed that the tenant has been in possession of these premises since prior to the freeze date, and that pursuant to section 2 of the Emergency Business Space Rent Control Law said store comes under the protection of the provisions of that law.
It is the opinion of the court that the landlord has failed to sustain the burden of proof that a fair rental agreement was executed in accordance with the provisions of subdivision 3 of section 4 of the Emergency Business Space Rent Control Law (L. 1945, ch. 314, as amd. by L. 1950, ch. 326) which sets forth the procedure permitting an increase of rent by written agreement between the landlord and tenant. His witness failed to testify that the unproduced written agreement conformed to the requirements of the statute in regard to either content or form. Accordingly, the increase in rent of $32.50 a month in the lease of March, 1960, is hereby declared null and void. The provisions establishing a modus operandi for a rental increase in the Emer *900 gency Business Space Rent Control Law cannot be waived by lease or otherwise as against public policy (§ 12). The refund to the tenant, however, is limited to 12 months prior to the institution of this action (§ 11). The fair emergency rent is hereby ¡fixed for the purposes of this proceeding at $392.50 a month instead of the $425 per month rent provided for in the lease of March, 1960.
As to the counterclaim alleging partial eviction, the court finds that the failure of the landlord to make repairs to the demised premises resulting in excess dampness, leakage and loss of use of a portion of said premises constitutes only a constructive eviction and there can be no recovery unless ‘ accompanied by tenant’s abandonment of the premises ” (West 30th St. Parking Corp. v. Sobel, 21 Misc 2d 274; Ferguson Bros. & Forshay v. Ward, 147 N. Y. S. 868). In the case at bar there ¡was no actual eviction since “ [a]n actual eviction exists where the physical expulsion of the tenant is effected” (Jackson v. Paterno, 58 Misc. 201, 204, affd. 128 App. Div. 474).
To obtain a reduction of rent because of partial eviction, the tenant must actually abandon the premises. The type of partial eviction claimed in this case, the court finds falls in the “ constructive ” rather than “actual” category. (Self Service Furniture Fair v. 450 Realty Corp., 114 N. Y. S. 2d 774).
No constructive eviction is compensatory in law, without an .actual abandonment or surrender of possession by the tenant. In the case of Boreel v. Lawton (90 N. Y. 293, 297) Chief Judge Andrews said: “ [W]e know of no case sustaining the doctrine that there can be constructive eviction, without a surrender of the possession.” Clearly a tenant must abandon possession in order to sustain his claim that he was forced out (City of New York v. Pike Realty Corp., 247 N. Y. 245, 247). A tenant cannot claim uninhabitability and at the same time continue to inhabit (Two Rector St. Corp. v. Bein, 226 App. Div. 73). “ In other words, then, in the case of constructive eviction, although the acts of the landlord may deprive the tenant of only a substantial part of the use and enjoyment of his premises, yet to constitute constructive eviction in the eyes of the law there must ,be a surrender of the entire possession by the tenant. This is different from the case of an actual eviction, where a tenant ¡may be expelled or excluded from only part of the premises, may continue in possession of the remaining part, and still claim a partial actual eviction. ” (1 Rasch, Landlord and Tenant, § 876.) “ Depriving a tenant from free access of his demised premises at all times, by interfering with his appurtenant right of ingress and egress, constitutes a partial actual eviction, in the absence *901 of any restrictions on such right of access contained in the lease.” (1 Rasch, Landlord and Tenant, § 865.) At any rate, both in an actual eviction and constructive eviction, the tenant must be deprived, denied, expelled or forced out of possession. In the first instance, there is an “ actual ” eviction because of some tortious or willful act of the landlord which expels or excludes the tenant from possession. In the second instance, there is a “constructive” eviction because of a forced surrender or involuntary vacating of possession by the tenant due to acts of the landlord not amounting to tortiousness nor willfulness. Temporary suspension or cessation of operation of the business for a few hours on four or six rainy days in several months, as testified to by the tenant, without a surrender of the premises, is not sufficient in and by itself to spell out a compensable constructive eviction. Since the tenant did not actually vacate, abandon or surrender the premises, his counterclaim for reduction of rent must fall.
As to tenant’s claim for a reduction in rent because of unreasonable diminution of services based upon subdivision (b) of section 7 of the Emergency Business Space Rent Control Law, the court finds that while the tenant was inconvenienced and had to stop his operation temporarily on various rainy days during the month, nevertheless, there was not sufficient unreasonable diminution or deprivation of use of the premises by the landlord so as to warrant the granting of a reduction in rent. I do not find that the rental value of the business space has been so reduced by reason of any unreasonable diminution of services by the landlord as to sustain this defense and counterclaim.
As for the prayer for injunctive relief to restrain the landlord from talcing any action to collect the rent until the landlord will have made the necessary repairs and restored the services to which the tenant is entitled, I find this to be academic since I accept the testimony of the landlord’s contractor that the necessary repairs to the roof were made in July, 1962.
Since the rent for the past three months is unpaid, the refund or offset to the tenant will be for the nine months prior thereto at $32.50 a month, amounting to $292.50. The rent for the unpaid months and thereafter shall be $392.50 per month. Judgment for landlord for three months’ rent at $392.50 per month, or $1,177.50, less $292.50 offset, or a net sum of $885. Final order for landlord, accordingly, for $885; five days’ stay.