SEYMOUR BARASH, Respondent, *v.* PENNSYLVANIA TERMINAL REAL ESTATE CORPORATION, Appellant.

First Department, March 13, 1969.

*Max Freund* of counsel (*Milton Adler* with him on the brief; *Rosenman, Colin, Kaye, Petschek, Freund & Emil*, attorneys), for appellant.

*Arthur Goodstein* of counsel (*William Rigler* with him on the brief), for respondent.

McGivern, J. The plaintiff, an attorney, is a tenant of a suite of offices in a newly constructed, completely air-conditioned office building, the walls and outer surfaces of which are sealed glass windows. Internally, the supply and circulation of air are exclusively under the control of the landlord.

This suit is against the landlord-owner of the building seeking: (a) the right of tenant to be relieved of rent during such time as he is actually and partially evicted from the premises due to the absence of ventilated air, and (b) reformation of the lease so that it will conform with the true understanding of the parties thereto, i.e., that he will be afforded ventilation during all times wherein he has access to the building.

The burden of the complaint is that defendant's agents induced plaintiff to lease his office by representing he would have ventilation at all times, that he would have at all times access to the premises and 24-hour elevator service. And but for that representation he would not have leased his office, as in the manner of many attorneys, he was wont to work in the evenings and on weekends. Thus runs the plaintiff's grievance. But he says that after 6:00 P.M. and on weekends the air is unbreathable, the office untenantable and the premises uninhabitable. Defendant stands on its construction of the lease, claiming its obligation to provide *air-cooling* is limited to 9:00 A.M. to 6:00 P.M. in the summer months on business days and *ventilation* "at other times during business days and similar hours." Although, by letter dated June 19, 1968, the landlord offers the plaintiff ventilation at the rate of $25 per hour. Special Term has found the complaint acceptable. So do we.

In our judgment, for such times as the air is unbreathable the premises do become in fact untenantable and for such times the plaintiff has sustained an actual partial eviction. And the relief requested, namely the suspension of the payment of rent under the lease during the period wherein he is deprived of the use and enjoyment of his leasehold, does not seem to be unreasonable. And it is countenanced by precedents both venerable and recent. (*Christopher* v. *Austin*, 11 N. Y. 216, 218; *Edgerton* v. *Page*, 20 N. Y. 281; *Fifth Ave. Bldg. Co.* v. *Kernochan*, 221 N. Y. 370; *Two Rector St. Corp.* v *Bein*, 226 App. Div. 73; *Kusche* v. *Sabin*, 6 N. Y. S. 2d 771, 773.) As was stated by the court, in its opinion, in *Edgerton* v. *Page* (*supra*, p. 283): "The rule has long been settled, that a wrongful eviction of the tenant by the landlord, from the whole or any part of the demised premises, before the rent becomes due, precludes a recovery thereof until the possession is restored. (*Christopher* v. *Austin*, 1 *Kern.* 217.)" Succinctly, the law was affirmed by

CARDOZO, J., in the *Fifth Ave. Bldg. Co.* case (*supra,* p. 373):
"If such an eviction, though partial only, is the act of the
landlord, it suspends the entire rent because the landlord is
not permitted to apportion his own wrong."

In our view, the predicament of the plaintiff should have
been, or was envisaged by the landlord. We have here an
ultramodern, late 20th century, monolithic style building,
designed to be completely impervious to outside air, like the
tomb of a pharaoh. The windows cannot be opened, although
the lease mentions "ventilation" in a not unambiguous phrase.
By letter dated May 17, 1968, however, the tenant is assured
that "there is a noticable flow of air through the system after
the hour of 6 P.M.". Then by subsequent letter, June 19, 1968,
he is offered off-hours ventilation at the rate of $25 per hour,
dehors the lease. We must observe that even if the plaintiff
attorney were recompensed for his professional labors at the
rate of $25 per hour, such efforts would avail him naught
financially, if he chose to work during the evening or on
weekends.

It is also our thought that the Administrative Code of the
City of New York dictates that all tenants be afforded access
to breathable air, without any extra charge beyond that set
forth in the lease. See, sections (5.1.1) and C26–258.0 and
(5.1.9) and C26–266.0 on the subject of ventilation. These sec-
tions speak of ventilation for "human occupancy", "either
from windows or from mechanical means". Thus, perforce,
we take the next step and find that without breathable air the
plaintiff has not been afforded what the code exacts and that
legally he has been actually and partially evicted.

This case, to our knowledge, is *sui generis,* arising out of the
technological age wherein we live. The precedents cited by
the minority bear no true factual parallel with the situation
before us. They do not deal with, nor did they envisage a
hermetically sealed building, the rented quarters of which,
without air or ventilation, become uninhabitable, precluding
human use. This state we equate with the principles underlying
the doctrine of actual partial eviction, permitting the suspension
of payment of rent, during the uninhabitable period.

Thus, we affirm the order of Special Term sustaining the
sufficiency of the complaint.

EAGER, J. (dissenting). I would modify the order, entered
October 22, 1968, to grant defendant's motion to the extent of
dismissing the first cause of action, with leave to defendant to
apply to Special Term to replead, and would otherwise affirm.

The basis of the first cause of action is the alleged breach of representations and warranties that the offices, leased by plaintiff from the defendant for law office purposes, " would be constructed with a duct system, which would always provide a natural and continuous flow of air in the offices "; that the " offices would have a sufficient flow of air so as to be sufficiently comfortable and usable at all evening hours and also on weekends, even when the air-conditioning and heating system were not in operation." The representations and warranties were not contained in the written lease of the premises but are alleged to have been orally made and to have induced the execution of the same by the plaintiff. It is the pleader's conclusion, unsupported by alleged facts, that the failure and refusal of the defendant to supply the continuous and adequate flow of air to plaintiff's offices " have caused the said offices to become untenantable and   *   *   *   was and still is an actual and partial eviction of the plaintiff from his offices in question ". The plaintiff then " demands judgment on this cause of action relieving the plaintiff from paying rent until the time that the defendant/landlord shall fulfill the aforesaid representations and warranties, and make the said offices usable by supplying ' a continuous flow of air therein ' on evenings and weekends."

The plaintiff insists that the gravamen of his cause of action is an actual partial eviction and that such eviction gives him the right to be relieved from the payment of rent until the landlord fulfills his alleged obligation to furnish a continuous flow of air on evenings and weekends.

Assuming *arguendo* that the plaintiff is not precluded by the provisions of the written lease from establishing the alleged misrepresentations and the alleged warranties and breach thereof, nevertheless, the plaintiff may not be relieved of his obligation to pay rent. The general rules, which are well settled, were restated in *Herstein Co.* v. *Columbia Pictures Corp.* (4 N Y 2d 117, 120–121) as follows: " [I]n an action for rent, it is not sufficient for the tenant to defend on the theory that there was a diminution of the beneficial enjoyment of the property. (*Edgerton* v. *Page*, 20 N. Y. 281; *Two Rector St. Corp.* v. *Bein*, 226 App. Div. 73.) Furthermore, there must be an abandonment of the premises by the tenant. (*Boreel* v. *Lawton*, 90 N. Y. 293; *Thomson-Houston Elec. Co.* v. *Durant Land Improvement Co.*, 144 N. Y. 34.) Lastly, the ouster by the landlord, or the justified abandonment of the premises, amounting to an eviction in law, must have occurred before the rent has become due. (*Fifth Ave. Bldg. Co.* v. *Kernochan*, 221 N. Y. 370; *Sully* v. *Schmitt*, 147 N. Y. 248.) "

On the facts alleged, all the plaintiff is claiming is that the defendant, as landlord, is wrongfully depriving the plaintiff of the full beneficial enjoyment of the leased premises; that the landlord is not furnishing services as represented and that the landlord's wrongful acts have impaired the value of the plaintiff's occupation of the premises  In this State, however, it has long been settled, starting with the decision of *Edgerton* v. *Page* (20 N. Y. 281) that, " [a]s against a tenant occupying the demised premises for the whole time in which the rent accrued, it is not suspended or extinguished by reason of wrongful acts of the landlord impairing the value of the occupation " (from the headnote).   Later decisions, very much in point, are *Forshaw* v. *Hathaway* (112 Misc. 112 [App. Term.]); *City of New York* v. *Pike Realty Corp.* (247 N. Y. 245); *Two Rector St. Corp.* v. *Bein* (226 App. Div. 73); *Webb & Knapp* v. *Churchill's Term. Rest.* (2 A D 2d 332).

In *City of New York* v. *Pike Realty Corp.* (*supra*), the defendant leased vacant land from the city but the city thereafter wrongfully refused to permit the defendant to erect thereon a public garage.   The trial court held that rent was suspended during the time that the city had prevented the defendant from erecting the garage.   The Court of Appeals, however, reversed, noting that there was no actual eviction in the case and none was claimed, and the court stated (p. 247): " The refusal of the city to approve the plans for a public garage was at most a breach of the covenants of the lease and a constructive eviction. [Citing cases.]   Consequently, the defendant not having abandoned the premises or surrendered the lease must pay the rent reserved and seek recoupment for the city's breach of contract."

In *Two Rector St. Corp.* v. *Bein* (*supra*), the leased premises were law offices in an office building.   It appeared that the landlord, in making repairs to the building, had erected a hoist close to the windows of the tenant's offices and, as a result, sunlight was cut off and noise and some dirt and dust entered the offices.   This court, in reversing a determination of the Appellate Term, held that the landlord was entitled to recover possession of the premises for nonpayment of rent.   The court said (p. 76): " [T]here was no actual eviction of the tenant from any portion of the premises.   The tenant continued in possession of the entire premises, of which there was no actual invasion by the landlord of any part.   At the most, the acts of the landlord tended to make a portion of the premises less enjoyable and might have constituted a constructive eviction from such portion of the premises, had the tenant surrendered the premises because of such acts.   A necessary element of a

constructive eviction is a surrender by the tenant of the demised premises. A tenant cannot claim uninhabitability, and at the same time continue to inhabit. If the tenant remains in occupancy the obligation to pay rent continues and any wrongful acts of the landlord do not constitute a defense to the action for rent, but may be set up as a counterclaim if arising out of a breach of the contract of lease.''

Finally, in *Webb & Knapp* v. *Churchill's Term. Rest.* (*supra*), the tenant, in connection with the leasing of premises for restaurant purposes, was given the right to erect an illuminated upright sign, 20 feet high, on the exterior wall of the landlord's building; the parties had agreed to enlarge the demise to include the wall space necessary to affix the vertical sign. The landlord, however, refused to permit the erection of the sign and the tenant refused to pay the rent. This court reversed the Appellate Term, which had dismissed the landlord's petition in summary proceedings (p. 335), '' without prejudice, however, to the tenant's right, if any, to recover in an appropriate action for the failure of the landlord to comply with its obligations, if any,'' in connection with the erection of the sign. Significantly, this court said (p. 334): '' There is no authority to extend the defense of partial eviction to situations such as this, where, it can only be said, at best, that the tenant did not receive all for which the letting called.''

In summary, the plaintiff's claim of part-time untenantability in alleged breach of defendant's representations and warranties does not give him the right to withhold the payment of rent. If the plaintiff here has a valid claim for abatement of the rent or for damages, on the theory of fraud or on the theory of misrepresentation and breach of warranty, he should be remitted to an application to Special Term for leave to plead such a cause of action.

CAPOZZOLI and NUNEZ, JJ., concur with McGIVERN, J.; EAGER, J., dissents in opinion in which STEVENS, P. J., concurs.

Order entered October 22, 1968 affirmed, with $50 costs and disbursements to the respondent.