Harold Fertig, J.
This proceeding brought for the recovery *843 of possession of real property and for a money judgment for arrears in rent, was heard by the court without a jury on three separate days. The hearing commenced on Thursday, January 23, continued on January 30 and terminated on January 31, 1975. On February 12, 1974, Hatov Realty Corp., by its president Meyer Meerbaum, entered into a lease with Cecile Steiner, as tenant, for the premises known as 32A Middle Neck Road, Great Neck, New York. The lease was subsequently assigned by the then tenant to Crepes D’Asie Inc. in accordance with its terms. The petitioner, Meyer Meerbaum, prepared the lease in question and then met with Cecile Steiner and her attorney, H. Gerald Malmud, at Mr. Malmud’s office. At that time and place, the parties continued their negotiations and Mr. Meerbaum, although not represented by an attorney, was no "babe in the woods.” Mr. Meerbaum is an experienced real estate operator, having prepared and negotiated a great many leases prior to this one. He was familiar with the terms discussed at the time of these negotiations and understood their meaning and consequences.
The lease provided for the rental of the store and basement beneath the store. It was also clear that the use and occupancy of the premises was for a restaurant and the selling of take-out food. The period of the lease was from February 15, 1974, until June 30, 1984. It further provided that the rent paid at the time of the execution of the lease, a sum of $1,050, was for the month commencing May 15, 1974, and ending June 15, 1974. Rent in the sum of $525 was to be paid for the one-half month commencing June 15 and ending June 30, 1974, and thereafter, the rent was to be payable on the first day of July, 1974, and on the first day of each subsequent month.
After paying the initial sum of $1,050, the tenant has paid no rent. There is no dispute that the unpaid amounts, if due, would amount to $525 for the period May 15, 1974, through May 31, 1974, and $1,050 monthly thereafter, or a total sum of $6,825 through December 31, 1974, as the claimed arrears. At the time of the negotiations, the tenant made it clear that it required the store and the basement for its use in the business, and it was further agreed that the landlord would obtain a certificate of occupancy. From the terms and conditions of the lease, it is obvious that from February 15, 1974, certain work was to be done by the landlord to put the premises into usable condition, and the tenant was to make *844 certain installations for the opening of a restaurant business by May 15, 1974. It was during this period of time between February 15 and May 15, that no rent was being charged, and the necessary work, alterations and installations were to be made.
The landlord, by Mr. Meerbaum’s testimony, never intended to obtain a certificate of occupancy, even though it did make an aborted effort for such an application in the summer of 1974. From February 15, 1974, until some time in November of 1974, the basement of the premises had an open sewer line permitting sewerage, debris and human feces to collect on the floor, causing the basement to be uninhabitable and further causing a stench to permeate the entire premises, including the store on the main floor. In addition, during the entire time that the tenant occupied the premises and until the present date, the ceiling and the floor in the basement remain incomplete. Both the ceiling and the floor have holes in them, and the basement exit door remains improperly affixed so that it cannot close. From the time the tenant took possession until some time in the beginning of May, there was no electricity or water on the premises. Landlord also warranted that certain equipment installed on the premises would be in good working order by May 15, 1974. Air conditioners, which were part of that equipment, leaked and caused an odor throughout the premises. As of the date of the hearing, although the electricity was open and available in the store, there was still no electricity in the basement.
The respondent opened for business for the first time on July 18, 1974, and closed on the 28th or 29th of July, 1974, due to the existing conditions, the odor in the basement, and the failure of all the services operating. It reopened on July 31, 1974, and has been open for business on the first floor since that date. Subsequent to the execution of the lease, the attorney for the tenant notified the landlord on seven different occasions between the period April 4, 1974, through August 2, 1974, of the landlord’s failure to comply with the terms of the lease and of the conditions which existed. The landlord never accepted any of the certified letters mailed to it and consequently did not respond to them, nor did it comply with the tenant’s requests.
It appears that prior to the time this lease was entered into between the parties, the premises were partially destroyed by a fire, which required substantial work and alteration to put it *845 in usable condition. At the time the parties negotiated the lease in question, the premises were still not completely restored.
Violations were placed on the premises by the Village of Great Neck Plaza for, among other things, failure to have proper drainage from the roof, for debris on the premises, the exit door of the basement not being self-closing, leaks in the water piping, inadequate lighting in the basement, and for failure to obtain a certificate of occupancy. As late as January 23, 1975, a violation was again placed on the premises for the continued failure to have proper drainage for the roof, a self-closing door for the basement exit, a fire retarding ceiling in the basement, adequate lighting and to provide an opening in the front of the building for a plumbing fresh-air inlet. The latter violations have been in existence since the inception of the lease and continue.
The respondent argues that by its acts, the landlord has actually evicted the tenant from a portion of the premises and having done so is not entitled to receive any rent for the entire period that such actual partial eviction continues. The landlord, on the other hand, does not concede that it did anything which would result in an eviction of any kind, but that if any eviction resulted from the existing conditions, it was at best a constructive eviction, which would require the removal of the tenant from the premises before it would be effective as a defense to the payment of rent. It has been well settled that an actual eviction occurs when the landlord wrongfully ousts the tenant from physical possession of the leased premises. It was so held in Fifth Ave. Bldg. Co. v Kernochan (221 NY 370), that there must be a physical expulsion or exclusion. It is also clearly defined that where a tenant is ousted from a portion of the demised premises, the eviction is actual, even if only partial (Fifth Ave. Bldg. Co. v Kernochan, supra; 524 West End Ave. v Rawak, 125 Misc 862). Even where the tenant is only partially evicted, liability for all the rent is suspended, although the tenant remains in possession of the portion of the premises from which he was not evicted (Barash v Pennsylvania Term. Real Estate Corp., 26 NY2d 77; Fifth Ave. Bldg. Co. v Kernochan, supra). In those cases, and over the years, the courts have held that such an eviction, though partial, is the act of the landlord, and it suspends the entire rent since the landlord is not permitted to apportion his own wrong.
*846 If, on the other hand, the tenant suffered a substantial diminution in the extent to which he could beneficially enjoy the premises, although there had been no physical expulsion or exclusion of the tenant, such wrongful acts of the landlord causing such diminution would substantially and materially deprive the tenant of the beneficial use and enjoyment of the premises, resulting in a constructive eviction (City of New York v Pike Realty Corp., 247 NY 245). In such an event, however, the tenant must abandon possession of the premises in order to claim a constructive eviction as a defense to the payment of rent. Unless the tenant abandons possession, there can be no constructive eviction (Edgerton v Page, 20 NY 281). It is clear that it would be inequitable for the tenant to claim substantial interference with the beneficial enjoyment of the premises and still remain in possession without the payment of rent (City of New York v Pike Realty Corp., supra; Edgerton v Page, supra; Barash v Pennsylvania Term. Real Estate Corp., supra).
In the application before this court, the tenant rented the premises located on the first floor and the basement. The condition of the basement was and is such that it is uninhabitable. There is an area filled with debris never removed by the landlord as was agreed in the lease. Holes in the walls and the ceiling of the basement continue to exist, which the landlord intentionally and willfully refuses to repair. The door to the basement was left off its hinges so that the tenant has no security in the basement area. For a period of time, there was no water or electricity in the basement, and the sewage lines were left exposed. There are any number of cases cited in Barash v Pennsylvania Term. Real Estate Corp. (supra), which have held that such noxious odors, defective plumbing and similar conditions would result in a tenant suffering a substantial diminution in its beneficial enjoyment of the premises. That would, under normal circumstances, be defined as a constructive eviction requiring the removal of the tenant from the premises before the tenant could be relieved of the payment of rent. However, this is not a simple case where the tenant, originally in possession, suffered substantial diminution in the beneficial enjoyment of the premises as a result of the landlord’s neglect or its failure to provide services. This tenant has neither been expelled nor excluded from the premises after having been in possession. Neither is this a question of a landlord who had failed to repair the premises *847 after the tenant was in possession in accordance with a covenant in the lease. The landlord, by the terms of the lease (rider "L”) agreed to complete and make the premises whole. A hanging ceiling, floors and walls of the basement of demised premises were all to be finished for the tenant’s use. In addition (rider "F”), the landlord agreed that by May 15, 1974 there would be a certificate of occupancy in effect. Petitioner argues that the ordinances of the village did not require it to obtain a certificate of occupancy for the premises. Whether a certificate of occupancy was required by the village in which the premises were located is not material. This covenant was a part of the contract between the parties and was something which the landlord agreed to obtain. The testimony clearly shows that with regard to rider "L” and rider "F”, referred to hereinabove, the landlord’s failure to comply with the terms of lease was intentional, willful and harmful to the tenant. The parties were both aware that the premises were in a state of partial construction, having been previously partially destroyed by a fire. It was understood between the parties that the landlord would put the premises into a condition which was useful for the tenant’s purpose, that of a restaurant. The certificate of occupancy required by the tenant, whether or not required by the village, was its means of assuring that the premises would meet all of the requirements necessary for the issuance of a certificate of occupancy, and that the reconstruction would be completed in such a manner as would meet those requirements. Until the landlord fulfilled those covenants required of it to put the premises into the condition as was agreed between the parties, the landlord was unable to give possession of the demised premises in accordance with the terms of the lease (Rein v Metrik Co., 200 Misc 231).
It has been held that should a tenant take possession of less than the entire premises described in a lease, knowing in advance that it could not get the entire demise and having with such knowledge, elected to take the available portion, such action would be a waiver of the defense of an actual partial eviction (Forshaw v Hathaway, 112 Misc 112; Webb & Knapp v Churchill’s Term. Rest., 2 AD2d 332; Carnegie Hall v Zysman, 238 App Div 515; Fifth Ave. Estates v Scull, 42 Misc 2d 1052). However (Econopouly v Hamerman, 185 NYS 291; Fifth Ave. Estates v Scull, supra), where the tenant takes possession of a portion of the premises without knowing that the remaining portion would not be available to it there would *848 be no waiver by the tenant, and a failure or the willful interference by the landlord with the tenant’s right of possession of the remaining portion of the premises results in an actual eviction.
In the Massachusetts case of Moore v Mansfield (182 Mass 302, 303), the court in referring to the landlord’s failure to give the tenant possession of all of the premises provided for in the lease stated; "but it does not matter whether the refusal to give up the room was a failure to perform the whole contract from the beginning, or a partial eviction after performance at the outset.” The court further stated that where there was no waiver by the tenant, failure to deliver a portion of the premises was an eviction. It has also been held in Self Serv. Furniture Fair v 450 Realty Corp. (114 NYS2d 774, 775-776) that "actual eviction may result from the removal or exclusion of a tenant from the premises or a part thereof, by physical acts, or threats of violence equivalent to force, on the part of the landlord, 52 C.J.S., Landlord and Tenant, § 449, p 168; or from some willful and deliberate act of the landlord resulting in the deprivation of the tenant of the very use of the premises within the legal contemplation of the parties, although not accomplished by the act of physical expulsion, City of New York v Pike Realty Corp., 126 Misc 260, 213 NYS 18.”
In the case before us, the tenant was given possession of a portion of the premises on February 15, 1974, with the understanding that the entire premises would be available by May 15, 1974 when the rent was to commence. During this period of time, relying upon the landlord’s representation to complete the reconstruction of the entire premises, including the basement, the tenant took occupancy of a portion of the premises and commenced to do a substantial amount of work. As it turned out, the tenant, because of the landlord’s willful neglect, was unable to open for business on May 15. It was not until July 31, 1974, that the tenant was able to make use of the store on the first floor for its business. By that time it had already invested substantial amounts of money and opened for business, still relying upon the covenants in the lease that the remaining portion of the premises (the basement) would be made available to it and possession given. The landlord stated that he bad no intention from the inception of this lease to obtain a certificate of occtipancy. If the landlord did not apply for and obtain a certificate of occupancy the tenant had a *849 right to expect that the reconstruction of the premises would be completed in such a manner as would permit the certificate of occupancy to be issued, even if the tenant had to apply for it itself. The landlord, by its willful refusal to complete and comply with the covenants of the lease, never delivered possession of the basement portion of the premises to this tenant (Rein v Metrik Co., 200 Misc 231, supra). This is not a matter of the landlord’s failure to repair after the tenant was in possession of the premises, nor is it a question of the landlord’s failure to act causing a diminution of the use and occupation of the premises or of its quiet enjoyment thereof. Here by its willful and intentional failure to perform the covenants of the lease that were necessary in order to give possession of the premises to the tenant, the landlord failed to give possession of that portion of the premises which consisted of the basement area so that the tenant was actually, partially evicted therefrom. Accordingly, the tenant’s defense to this summary proceeding has been sustained. The landlord’s claim for possession and for rent are denied, and tenant shall have judgment accordingly.